Plaintiff is the widow of Wilbert Thomas, who died as the result of an automobile accident in which the truck on which he was riding struck a depression in the street, swerved to the curb and ran into a tree. Thomas was an employee of defendant, Godchaux Sugars, Inc., which corporation had secured a policy of workmen's compensation insurance from the Associated Indemnity Corporation.
Plaintiff alleges that the death of her husband resulted from an accident which occurred in the course of and arose out of his employment; that the business in which his employer was engaged was hazardous and within the contemplation of the workmen's compensation laws of Louisiana, Act No. 20 of 1914, as amended, and that her said husband was engaged in performing hazardous duties in connection with the *Page 415 
business of his employer. She alleges also that at the time his rate of pay was $27 per week and that she, as widow, is entitled to compensation at the rate of $8.28 per week for 300 weeks.
Defendants admit that Thomas was an employee of Godchaux Sugars, Inc., and that he died as a result of an accident which occurred while he was riding in a truck of the said company, but they deny that when he was injured he was acting within the scope of his employment, and they deny also that at the time the truck was being operated by an employee of the said Godchaux Sugars, Inc., acting within the scope of his employment.
There was judgment dismissing plaintiff's suit and she has appealed.
When the case came up for trial in the district court, one witness was placed on the stand on behalf of plaintiff, and when the testimony of that witness had been taken, counsel for plaintiff announced: "We will rest on that". Thereupon counsel for defendants stated to the court that he did not think that plaintiff had made out a case. He said: "* * * These people were disobeying orders and not doing what they were directed to do. While we have a large number of witnesses, I don't think on the showing of plaintiff's own witness they have made out a case. They were not acting within the scope of their employment at the time. * * *"
Thereupon the district judge stated that in his opinion the plaintiff had not made out a case; that the testimony of the only witness who had been produced led to the conclusion that at the time of the accident, the plaintiff's husband and the driver of the truck were not acting within the scope of their employment by the defendant, Godchaux Sugars, Inc.
It appears from the only evidence in the record, which is the testimony of the one witness, Edwin Ward, who was also an employee of Godchaux Sugars, Inc., that on the day of the accident, at about 12 or 12:30 o'clock, he, Ward, and plaintiff's husband, Thomas, were sent from the plant of Godchaux Sugars, Inc., which, though the record does not show it, seems to be in New Orleans, to dump a truckload of trash, and that they were ordered to take this trash to the Audubon Park dump. They invited two other persons to go with them, but had no intention, so Ward says, of going to the Audubon Park dump. They went instead to a grocery where he cashed his pay check. He does not remember whether Thomas cashed his pay check there also. At any rate, they then went to a pool hall and remained there for approximately three hours. Ward says that although they had been instructed to go to the Audubon Park dump, they did not do so because they knew that that "place was very filthy and marshy like quicksand and the first time we went there we got stuck" and that "The next time we ran out of gas and the flies were awful and the bugs and everything. I decided I did not want to go there any more."
After cashing his pay check at the grocery, Ward drove the truck with Thomas and his two "guests" to Valley's Pool Hall where, as we have said, they remained for about three hours. In the course of the ride it developed that the plaintiff's husband, Thomas, was employed by Consolidated Vultee Aircraft on the shore of Lake Pontechartrain, or wanted to seek employment there, and Ward says that when they left the pool hall he "intended to take Thomas to that aircraft plant" and he added that Thomas "told me a place where I could dump and, in the meantime drop him off and he would go to work."
Prior to that they had taken the truck to a dump operated by "an old lady named Aunt somebody but had not been permitted to dump the trash there." Ward says that therefore "we had to get a new place."
Counsel for plaintiff seeks to persuade us that when they had completed their operations at the pool hall and had called on the old "lady" who operated the other dump, they really set out to find the Industry Street garbage incinerator so that they might dump the trash there, and that they did not intend to take Thomas to his other job with the air plant corporation until they had dumped the trash. It appears however that at that time Ward did not know where the Industry Street incinerator was. Though he first said that they intended to go to the incinerator and drop *Page 416 
Thomas off in the meantime, he attempted to change his testimony so as to show that, as a matter of fact, they were going to the incinerator first and then to take Thomas to the other job.
[1] The entire testimony is most confusing and we form the conclusion that the dumping of the trash was of no great importance in the lives of Thomas or of Ward; that their principal business on that afternoon was to amuse themselves at the pool hall and to take Thomas to the aircraft plant, although each may have had a mental reservation that sooner or later they would arrive at some place at which they could dump the trash. One thing is clearly shown by the evidence. That is that they had diverted entirely from the route they were instructed to take and had left the course of their employment for purposes of their own.
This having been shown, it became the obligation of the plaintiff to prove that they had re-entered the course of employment and were actually engaged in carrying out their duties when the accident occurred.
[2, 3] In tort cases the doctrine of re-entry is well established and it is held that although an employee may depart from the course of his employment, his employer may be held liable for his negligent actions if it appears that at the time of the accident caused by his negligence he had formed the intention of returning to his work and had altered his course in an effort to do so. We have been shown no case in which this doctrine of re-entry has been held applicable where workmen's compensation is involved. Even if it be conceded that the doctrine is applicable in workmen's compensation cases, and we by no means so hold, it is not applicable here because, as we have said, we are convinced from the evidence that Ward and Thomas had no intention of carrying out the duties they were instructed to perform, unless and until by mere chance they happened to arrive at some place at which they might dump the trash.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.