193 So.2d 255

**Alvin K. BATES**

**v.**

**GULF STATES UTILITIES COMPANY.**

**No. 48288.**

Dec. 12, 1966.

Rehearing Denied Jan. 16, 1967.

Anthony J. Graphia, Hebert, Glusman & Moss, Baton Rouge, for plaintiff-appellant.

F. W. Middleton, Jr., W. S. McKenzie, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendant-appellee-respondent.

HAMLIN, Justice:

In this workmen's compensation proceeding, we exercised our supervisory jurisdiction (Art. VII, Sec. II, La.Const. of 1921) by directing certiorari to the Court of Appeal, First Circuit, (249 La. 581, 187 So.2d 741), in order that we might review its judgment which affirmed the judgment of the trial court rejecting plaintiff's demands for alleged total and permanent disability plus medical and incidental expenses. (186 So.2d 895)

The same issue—whether plaintiff received personal injuries by an accident arising out of and in the course and scope of his employment—presented to the trial court and the Court of Appeal for determination is advanced herein. See, LSA–R.S. 23:1031.

From the facts of this case stipulated in the trial court, we quote those necessary for an understanding of our opinion.

"Plaintiff was employed by defendant on or about May 28, 1956, and continued in its employ through December 22, 1964. He was employed to do strenuous, heavy work, heavy lifting and digging and operations relative to the installation of gas lines, which work forms a part of the regular trade, business or occupation of defendant.

"On December 22, 1964, plaintiff was working at a job site near the Airline Highway installing and readjusting a gas line. Plaintiff left the job site by means of transportation furnished by defendant at approximately 4:05 o'clock P.M. and was returned to defendant's premises at approximately 4:25 o'clock P.M.

"Defendant's premises are located on Choctaw Drive within the City of Baton Rouge. Choctaw Drive is a major thoroughfare which traverses the City of Baton Rouge from East to West. Defendant's premises consists of a parcel of land surrounded by a fence which encloses several buildings and a parking lot used for defendant's vehicles and for the vehicles of its employees who choose to drive their own automobiles to work. Defendant's premises are serviced by a city bus line. * * *

"Upon re-entering defendant's premises, plaintiff and the remainder of his crew debarked from their crew truck at the Tool House. After checking through the locker room in the Gas Service Building, plaintiff was released from further duty for the day at 4:30 o'clock P.M., which was the regularly scheduled time

for plaintiff and his fellow employees to be dismissed for the day. · He was then allowed to leave defendant's premises by whatever means he desired. Plaintiff proceeded to his own automobile which was parked in the Employee's Parking Area on defendant's premises adjacent to Choctaw Drive. Plaintiff had the intention of driving his automobile home.

"Upon reaching his automobile, plaintiff discovered that his right rear tire was flat. He then removed the tire from his automobile; and while still in the Employee's Parking Area near his automobile, he repaired his flat tire.

"As part of the facilities located on its premises which includes the Employee's Parking Area, defendant maintains a Garage for the repair and maintenance of defendant's vehicles. After completing his repair of the tire, plaintiff rolled his tire to the Garage and into an area of that building known as the lubritorium. This area is primarily used to lubricate defendant's trucks. He did not use defendant's tire repair room which contained equipment to fasten down a tire while it was being repaired.

"Plaintiff was never required to use the facilities of the Garage while engaged in the activities which he was hired to perform for the defendant. Additionally, he was not hired to perform, was

never assigned, nor did he ever perform any duties relating to the repair and maintenance of vehicles.

"Using defendant's air compressor and hose located in the lubritorium, plaintiff began to inflate his tire. During the course of this undertaking, plaintiff was struck on or about the upper part of his body and face by the tire and/or rim when his tire exploded against the floor, propelling its wheel into the air striking plaintiff and causing him serious and disabling injuries.

"Plaintiff did not seek permission from or assistance of any of the three employees of defendant who were on duty in the Garage at the time of the accident. * * *

"On the date on which the injury occurred, the business in which the defendant was engaged was considered hazardous under the compensation laws of the State of Louisiana as were the regular duties performed by plaintiff.

" * * *

"As a result of the injuries sustained in the accident complained of plaintiff is totally disabled up to the present time, and will be for an undetermined future time.

"Defendant has refused to pay petitioner any compensation notwithstanding amicable demand but has paid plaintiff an

amount equal to his regular wages for a period of ten (10) weeks through March 8, 1965, under an informal employee sickness and benefit procedure, voluntarily followed by defendant in most cases."

The Court of Appeal stated that an injured employee might recover under the Workmen's Compensation Act if the accident suffered and resulting injury occurred during the time the employee was acting pursuant to orders or was doing some phase of his employer's work under such circumstances as could be construed as implied consent. It found that at the time of the instant accident, plaintiff was not engaged about his employer's business but was merely pursuing his own private business changing the tire on his own private automobile. The Court of Appeal said that under the facts stipulated to it could not find the employee's business reasonably required the plaintiff to be at the place of the accident at the time the accident occurred.

Plaintiff contends that the Court of Appeal erred in its findings, and that he should not be deprived of compensation by the mere fact that the accident occurred while he was engaged in attempting to repair his vehicle. He argues that his right to recovery should be the same as that given to employees while injured in the act of actually leaving the premises.

Defendant urges that the judgment of the Court of Appeal is correct and should be affirmed. It relies on the cases of Hammer v. Lazarone, La.App., 87 So.2d 765, and Loftin v. Woodhatch, La.App., 26 So. 2d 704.

In 1917, shortly after the passage of the Workmen's Compensation Act, this Court, in the case of Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256, 258, stated that after vain attempts at formulating some verbal test for determining when the injury has or not arisen out of the employment the courts have come to the conclusion that each case must be determined from its own facts. We agree with this conclusion and think it is still applicable today. No hard and fast rule can be set as to when an employee's actions in leaving from or going to his employment are private or are in the scope of or arise out of his employment.

However, in trying to formulate some sort of guide, the Court of Appeal, in Thibodaux v. Yount Lee Oil Co., 13 La. App. 591, 128 So. 709, stated, "If any rule is to be extracted from the numerous cases we have examined on the particular point involved here, it is to the effect that, where the employee is injured in going to or from work while he is still on the employer's premises, or is injured in a conveyance furnished by the employer to transport him to and from work, his claim is compensable; * * * *" Professor Wex S. Malone in his "Louisiana Workmen's

Compensation Law and Practice," Sec. 169, p. 193, states:

"Furthermore, even if he has finished the day's work and is preparing to leave, or is in the act of leaving, he is entitled to a reasonable period while still on the premises which is regarded as within the course of the employment. The working day embraces these intervals just as it includes reasonable periods for rest, relaxation or the attendance of personal needs."

■ The above stipulated facts of the present case show that defendant's parking lot was a *perquisite* [1] of its employees. The employer certainly contemplated that a number of its employees would avail themselves of the parking lot, using private cars in preference to the city bus. The garage located on defendant's grounds and used for the repair and maintenance of defendant's vehicles bore neither danger warning, no admittance, nor enter at your own risk signs. Under such facts, an employee could reasonably conclude or assume that since he had the right of parking, he also had the right to employ the facilities of the lubritorium for the inflation of a tire.

Plaintiff had to repair his flat tire before he could drive his car off of his employer's lot. He could not have been expected to leave the lot and go to a filling station to inflate the tire when his employer's pumping facilities were readily available with air. Plaintiff acted as a reasonable man would act and did not take an unreasonable time. The facts show that he did not loiter during nor turn from the repair.

■ Since plaintiff would have been within the scope and course of his employment while driving off of his employer's lot, we are constrained to conclude that his action of repairing his tire—a preparation to leaving the lot—was not an engagement in his own private business. Plaintiff's anticipated departure and the repair of his tire were one continuous transaction, and both were therefore within the scope and course of his employment. It follows that the personal injuries suffered by plaintiff resulted from an accident arising out of and in the course and scope of his employment.

The facts of the Hammer and Loftin cases, supra, are not identical to those stipulated herein. The cases are not apposite.

1. Webster's New World Dictionary of the American Language, College Edition, defines *perquisite* as follows: "1. something additional to regular profit or pay, resulting from one's position or employment, especially something customary or expected, as a tip or gratuity. 2. something to which a person, institution, etc. is entitled by virtue of status, position, or character; prerogative; right: as, the frank is a *perquisite* of congressmen."

Because of our findings, supra, it now becomes necessary to determine the extent of the injuries suffered by plaintiff and the amount of compensation to which he is entitled. The stipulated facts state that plaintiff is totally disabled up to the present time, and will be for an undetermined future time. Such a statement—made in 1965—is not sufficient for us to pass judgment as to plaintiff's disability at this time. Plaintiff prayed for medical and incidental expenses; his being entitled thereto and their correctness is a matter of proof. Remand must therefore be decreed in this matter.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is reversed and set aside, and the cause is remanded to the district court for further proceedings according to law and consistent with the views hereinabove expressed. Costs in this Court are to be borne by defendant, Gulf States Utilities Company.

HAMITER, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.

Rehearing denied.

HAMITER and HAWTHORNE, JJ., are of the opinion that a rehearing should be granted.

193 So.2d 259