AYRES, Judge.
This is an action under the workmen’s compensation statute, LSA-R.S. 23:1021 et seq., wherein plaintiff, in her individual capacity and as representative of four minor children, seeks to recover of the defendant, Chicago Mill and Lumber Company, compensation at the maximum statuto *375 ry rate for the death of her husband, the late William S. Lisonbee.
Lisonbee, employed as a night watchman by defendant at its plant and mill, located at Tallulah, Louisiana, went to his death about 8:15 p. m. during his working hours on April 12, 1970, through an exchange of pistol shots with a man who opened fire on a clerk at Williamson’s Grocery, located across U. S. Highway 80 in front of the entrance to defendant’s plant.
The issue determinative of this cause is whether Lisonbee’s death arose out of and was within the course and scope of his employment. Defendant contends that Lison-bee’s death did not arise out of his employment nor occur in the course and scope of his employment, as Lisonbee had, at the time of his death, deviated from his duties by leaving his employer’s premises contrary to explicit instructions.
The trial court sustained defendant’s contentions and rejected plaintiff’s demands. From the judgment accordingly rendered and signed, plaintiff devolutively appealed to this court.
Defendant’s millsite, comprised of approximately 100 acres, was fenced on three sides, with the rear bordering on a railroad right of way. On the site, within the bounds of the fence and railroad, were a sawmill, a lumber yard, a box factory, an office, and miscellaneous buildings.
The watchmen’s duties required that they keep watch on the premises, particularly for fire and for the entry of unauthorized persons. In addition, the watchmen were required to punch a clock at 38 “key” stations distributed over the premises. This errand was on an hourly basis. For transportation over the premises, the watchmen were furnished gasoline-propelled carts. The time consumed in making each round was approximately 40-50 minutes. No time off was allowed for meals. Mrs. Lisonbee customarily brought her husband’s “lunch” to him about 8:00 p. m. She endeavored to arrive at the watchmen’s station inside the entrance a few minutes before his arrival to avoid any delay on his part. In such events, she would pass through the entrance and wait at the watchmen’s station.
On the day of his death, a Sunday, Li-sonbee reported for work on the shift from 4:00 p. m. until midnight. Mrs. Lisonbee, due to church activities, was late in arriving with her husband’s “lunch” as she had theretofore explained to him she might be. Upon his arrival at the watchmen’s station, finding that his “lunch” had not arrived, he walked across the street to the grocery store and bought a snack which he proceeded to eat while engaged in conversation with Mrs. Williamson. While Lison-bee was so engaged, a man, Charles Ballet, came into the store and purchased a candy bar from a clerk, Jack McLaughlin. While McLaughlin was returning change to Ballet in consummating the purchase, Ballet shot McLaughlin, using a pistol, whereupon an exchange of shots took place between Ballet and Lisonbee. Ballet also fired two shots at Mrs. Williamson. Li-sonbee was killed in the affray about 8:15 p. m. Neither words, argument, nor fracas of any kind is shown to have preceded or precipitated the shooting.
From the store front, a distance of about 75 feet to the entrance to defendant’s plant, one had a general view of a very large segment of defendant’s premises. From inside the store, where Lisonbee was standing at the beginning of the affray, the view of the mill was more restricted or limited.
Testimony of the officers of defendant is positive and unequivocal of the company’s policy requiring that its watchmen be restricted to the premises during the entire interval of their daily employment. The purpose intended to be served was an early detection of any fire or other hazard. This requirement for a constant surveillance of the premises was conducive to a favorable insurance rating. Nor is there any question that appropriate instructions were given the watchmen, including Lison-bee, that they were to so remain on the *376 premises throughout the hours of their daily assignments.
The denial of compensation by the trial court was based upon the conclusion that Lisonbee’s death did not arise from nor was it in any manner connected with his employment for the reason that Lisonbee had abandoned his employment and was not so engaged at the time he was shot. A fundamental provision of the Workmen’s Compensation Act is that:
“If an employee not otherwise eliminated from the benefits, of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. * * * ” (Emphasis supplied.)
LSA-R.S. 23:1031.
In giving effect to the above statutory provision certain tests have been established. For instance, in Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256, 259 (1917), it was held that a proper test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment. In further amplification of the statute, it was stated in Kern v. Southport Mill, 174 La. 432, 141 So. 19, 21 (1932):
“Now an accident occurs in the course of an employment when it takes place during the time of such employment; just as a happening occurs in the course of any given day when it takes place during that day. Hence the provision that the accident, to entitle the employee to compensation, must occur in the course of his employment, means nothing more than that it must have taken place during, the hours of employment and not at any other time.”
In this case, the accident or incident resulting in the employee’s death occurred most certainly “during the course” of the deceased’s employment. Such happening took place during the hours of his employment. However, as pointed out in the Kern case:
“But that alone is not enough for recovery; the statute further requires that the accident must also ‘arise out of the employment. By which is meant, that the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. (Emphasis supplied.)
“But time, place, and circumstance must determine this. . . . And, when one finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business called him there, the injuries he may suffer by reason of such accident ‘arise out of’ the necessity which brought him there, and hence ‘arise out of’ his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.
“In determining, therefore, whether an accident ‘arose out of’ the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer’s business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer’s business reasonably require that the employee be at the place of the accident at the time the accident occurred?”
And, in emphasizing the principle in permitting recovery of compensation in the cited case, the court stated:
“. . . It was his employer’s business which called him to the place and time of the accident and not his own *377 pleasure or business; and hence his injuries arose out of his pursuit of his employer’s business and not out of his pursuit of his own business or pleasure.”
The Myers and Kern cases point up the distinction between the terms “arising out of” and “in the course of.” They are not synonymous. The former suggests an inquiry into the character or origin of the risk while the latter brings into focus the time-and-place relationship between the risk and the employment. Louisiana Workmen’s Compensation, Malone, §§ 161 and 162.
As correctly pointed out by the trial judge, the nature of Lisonbee’s employment did not increase the risk of his being shot by a strange man in a store across the street and away from his employer’s premises. Evidence of this fact is that McLaughlin was shot and wounded at the same time and place by the same stranger who had no connection or relationship with defendant, and the proprietor of the store was shot at twice. The matter of the employment of these parties was obviously of no concern or importance to the strange man.
Nor can it be concluded that the necessities of the employer’s business reasonably required that Lisonbee be at Williamson’s Grocery at the time of the accident. The interest of the employer was not served by his presence in the store. To the contrary, as heretofore noted, Lisonbee, as well as the other watchmen, were specifically instructed not to leave defendant’s premises without first obtaining relief from another watchman or supervisor.
The principle underlying the enactment of the workmen’s compensation statute — that those who enjoy the product of a business should ultimately bear the cost of injuries incident thereto — makes sense only if the injuries bear some significant relationship to the business operation. Such a relationship must be determined with reference to the particular facts of each case inasmuch as there is no exact rule for such determination. The test for recovery in marginal cases is to what degree or limit the injured employee was subjected to the hazard causing the injury by virtue of his status as an employee, and to what degree the injured employee’s activities at the time were at the direction of or in the interest of his employer. Smith v. Orleans Management Corporation, 242 So.2d 288, 289 (La.App., 4th Cir. 1971); Harvey v. Caddo De Soto Cotton Oil Co., 199 La. 720, 6 So.2d 747 (1942); Kern v. Southport Mill, supra.
In the instant case, the activities which caused the employee’s death were not incidental to his status as an employee of the defendant; nor did his employment increase the danger of his being killed by a stranger in Williamson’s Grocery. The fact is that his activities were not directed by or in the interest of his employer but, to the contrary, by specific instructions, were prohibited. He was permitted to eat his “lunch” on the premises and during the course of his employment at any time he chose when the necessities of his employer’s business did not otherwise require his time, such as at intervals of 10 or 15 minutes at the end of each round made in punching the time clock. There was no urgency requiring that he eat his evening meal at the termination of the errand at approximately that hour. The deceased had been informed by his wife, as heretofore noted, that she would possibly be late because of activities in which she would be engaged that evening at her church.
 Although certain legal rules and procedures are construed liberally in favor of a workmen’s compensation claimant, the burden of proof by a preponderance of the evidence is not relaxed and remains the same as in other civil cases. Thus the plaintiff in such a case bears the burden of proof and must establish his claim to a legal certainty by a reasonable preponderance of the evidence. Roberts v. M. S. Carroll Co., 68 So.2d 689 (La.App., 2d Cir. 1953); Mamon v. Western Waterproofing Co., 243 So.2d 105 (La.App., 1st Cir. *378 1970); Williams v. New Orleans Paper Box Company, 185 So.2d 109 (La.App., 4th Cir. 1966).
Thus, the liberality of statutory interpretation in favor of an employee cannot serve to relieve a claimant of the responsibility of establishing that he was engaged about his employer’s business and that the necessities of his employment reasonably required his presence at the scene of the accident at the time of its occurrence, and as a result of which disabling injuries or death, as in the instant case, was sustained. Brown v. Hertz Corporation, 246 So.2d 32 (La.App., 4th Cir. 1971 — writ refused).
For the aforesaid reasons, the conclusion is inescapable that plaintiff has not sustained her burden of proof, but, to the contrary, the preponderance of the evidence is to the effect that the employee’s death did not arise out of his employment.
The judgment appealed is accordingly affirmed at plaintiff-appellant’s costs.
Affirmed.