MARVIN, Judge,
dissent from refusal to grant rehearing.
I respectfully dissent from this court’s refusal to grant a rehearing because the facts of this case, when analyzed in the proper perspective of the Louisiana statute and cases, support the conclusion of the trial court that this employee’s accidental drowning arose out of and occurred during the course of his employment. Lisonbee v. Chicago Mill and Lumber Company, 278 So.2d 5 (La.1973); Malone-Johnson, “Workmen’s Compensation”, 2d Ed., La.Civil Law Treatise, Vol. 13, § 149.
This court agreed with the factual findings by the trial court that this 16-year-old employee accidentally drowned during working hours when he was being paid an hourly wage and while on an employer sponsored swimming party to which he and other young CETA employees were transported by their supervisor in an employer owned vehicle.
The trial court found the decedent within the coverage of the law for the additional reasons that these young men remained under the supervision and control of their supervisor during the swimming party, that the party was within the broad general purpose of the CETA program, and that the employer’s business was as much furthered by the supervised swimming party as the CETA employees sitting under a shade tree as they often did with their supervisor when they had run out of something to do.
Notwithstanding these findings, this court reverses the trial court and holds that the drowning did not arise out of, or in the course of, the employment because
—the swimming party was not held within the corporate limits of the employer.
—the party occurred on the last day of the CETA work program and did not directly benefit the employer, and
—attendance at the swimming party was entirely voluntary because the work of the CETA employees ended when their supervisor, on the way to the swimming pond, stopped the employer vehicle at a store to purchase picnic supplies for the party.
Resolution of the question of arising-out-of and in-the-course-of [what risk is included within the act?] should be made in the light of Lisonbee, and its progeny. There it was recognized that there is an interplay between the dual requirements arising-out-of and in-the-course-of and that the question should not be decided by phrases, but *1345 by an analysis of the particular facts of each case, the origin of the particular risk and the time and place relationship between the risk and the employment.
“The terms arising out of, and in the course of are not synonymous. The former suggests an inquiry into the character or origin of the risk, while the latter brings into focus the time and place relationship between the risk and the employment. The two requirements cannot, however, be considered in isolation from each other. A strong showing by the claimant with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-course-of requirement, or vice versa. As a corollary it follows that whenever the showing with respect to both requirements is relatively weak a denial of compensation is indicated. Malone, Louisiana Workmen’s Compensation, §§ 162, 192. “These concepts are developed from cases interpreting the spare phrases arising out of the employment, and in the course of the employment. But the question of which risk shall be included within the act and which shall be excluded cannot be decided by phrases. Each case must be determined from its own facts. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932); Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256 (1917).” 278 So.2d at 7.
The suggested analytical approach has been followed in the appellate courts and is fully explained in Malone-Johnson, Chapters 7 and 8. See Hall v. Joiner, 324 So.2d 884 (La.App.3d Cir. 1975); Turner v. United States Fidelity & Guaranty Co., 339 So.2d 917 (La.App.3d Cir. 1976); Mitchell v. Employers Mut. Liability Ins. Co., 341 So.2d 35 (La.App.3d Cir. 1976); Whitney v. U. S. Fid. & Guar. Ins. Co., 373 So.2d 728 (La.App.2d Cir. 1979); Campbell v. Baker, Culpepper & Brunson, 382 So.2d 1046 (La.App.2d Cir. 1980). My analysis of this case in the proper perspective convinces me that this court erred in refusing a rehearing.
The origin of this risk lies with the immediate supervisor of the young CETA employees. It was her responsibility to teach these teenagers some of the responsibilities of employment and submission to authority. Her authority had been firmly established in an earlier showdown between her and the teenage employees when she sent them home before the end of one work day with only three hours pay because they were insubordinate to her. This was a make-work program and the young employees were supposed to go where and when, and to do what, their supervisor told them.
The CETA supervisor told these youngsters during the early part of the week that she would take them swimming on the last day (Thursday) of the work program. On that day she informed them when it was “time” for them to go on their swimming party-picnic. She took them from their last place of labor to the store and then to the pond and would have returned them back to town when the party was over. She had carte blanc supervision and control over these youngsters and was not forbidden by the Mayor of the town to take the employees on an outing outside of town.
Even if it be conceded that attendance at the swimming party was voluntary [and I do not so conclude], the participation of the CETA youngsters during their working hours was at least urged, suggested, and requested by their supervisor. Urging, of course, is not compelling, but a superior’s wish is often understood by a subordinate to be a command. In any event, it is the urging, the request, the suggestion to the subordinate by the supervisor which becomes the legally operative fact even though a direct command is not made. “Compulsion need not take the form of a direct order, if the employee is made to understand that he is to take part in the affair.” Larsen, § 22.22, p. 5-84.
Under these circumstances, the arising out of requirement is met when the inquiry is made into the origin of the risk which caused the death.
The in the course of requirement brings into focus the time and place relationship between the risk and the employment. Li-sonbee, supra. The time relationship is be *1346 yond contradiction. This 16-year-old employee drowned during working hours for which he was being paid, while on an employer sponsored outing (according to this court), and while under the supervision and control of his supervisor (according to the trial court).
When viewed in the light of the origin of the risk and of the time relationship, the place relationship is also firmly established and is not tenuous. According to the authority cited by the court, the one argument in favor of compensability in company picnic cases is that the picnics almost invariably take place on company time with the employee continuing to draw his pay.
“In one sense, when the employer plans a regular outing and urges his employees to go to a specified place for the purpose, continuing their pay while there, it may be said that both the time and space limits of the employment are expanded to picnic day at the picnic grounds.” Larsen, § 22.23, p. 5-91.
Since this was a make-work program of 9 weeks duration, this supervisor often had to look for things for these youngsters to do. She sometimes instructed them to sit under a shade tree while she determined when, what and where they would perform their next activity. The trial court found: “. . . the employer’s business seems to be almost as much furthered by this supervised activity [the swimming party] as . . . sitting under the tree ... on some hot afternoon when they had completely run out of things to do.”
The law requires only that the accidental death or injury arise out of and occur in the course of the employment, and does not require that there be a direct benefit to the employer in every case involving employee activity. I would find here, as did the trial court, that in view of the particular purpose of the CETA program that there was some direct benefit to the employer such as community good will and inducement to these or other prospective employees to accept employment in the next CETA program.
The absence, however, of a direct benefit to the employer, perhaps is a factor in determining whether the dual requirement of arising out of and in the course of employment is satisfied by the circumstances, but that factor alone should not be controlling.
The crucial and suggested inquiries concern the origin of the risk and the time and place relationship between the risk and the employment. Lisonbee, supra. The circumstances of this case show that the risk was created by the urging, the request, the suggestion, if not the order, of the supervisor, that the employees were exposed to that risk by the supervisor transporting them to the pond, that there was a relationship in time (during working hours) and in place (an employer sponsored outing) to where the teenage employees were taken by their supervisor in a company owned vehicle.
The two requirements arising out of and in the course of cannot be considered in isolation from each other. Lisonbee, supra. When they are considered together and the Lisonbee type analysis is made of the particular factual circumstances, the courts are approaching the question of compensability in the proper perspective. Malone-Johnson, supra, § 149, p. 301.
But even if the case is approached in the manner that this court has approached it, the facts of this case are more akin to the Maryland case and the Minnesota case than to the Texas case and the Arizona case, all cited and discussed in this court’s opinion. When the added factors of the purpose of the CETA employment and the age and inexperience of the CETA employees, are considered, there is even more reason for finding coverage.
I would grant a rehearing and ultimately affirm the judgment of the trial court.