532 So.2d 255 (1988)
Walter LaFLEUR, Jr. Plaintiff-Appellant,
v.
SWALLOW'S RICE MILLS Defendant-Appellee.
No. 87-666.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
*256 Gary J. Ortego, Ville Platte, for plaintiff-appellant.
Guiglielmo & Lopez, H. Douglas Hunter, J. Opelousas, J. Jake Fontenot, Momou, for defendant-appellee.
Before DOMENGEAUX, KNOLL and KING, JJ.
DOMENGEAUX, Judge.
The plaintiff-appellant, Walter Lafleur, Jr., appeals the judgment of the District Court denying him worker's compensation benefits. He alleges four errors by the Trial Court:
(1) In finding that plaintiff-appellant was not employed at the time of his accident by defendant-appellee, Swallow's Rice Mills.
(2) In finding that defendant-appellee proved that the plaintiff-appellant intentionally and willfully intended to injure himself or another.
(3) In finding that defendant-appellee proved that plaintiff-appellant was intoxicated at the time of his injury.
(4) In finding that plaintiff-appellant was not entitled to penalties and attorney's fees based on defendant-appellee's arbitrary and capricious refusal to pay compensation benefits.

FACTS
On October 30, 1984, the plaintiff, Walter Lafleur, Jr., a twenty-eight year old male employee of defendant, Swallow's Rice Mills, was injured while on the rice mill premises. The work at the mill is seasonal, and the two main characters in this drama, the plaintiff, and M.L. Droddy, a man in his mid-fifties, had just recently been hired by the mill's owner, Wilfred Soileau. At the trial, there was conflicting testimony of the events leading to the plaintiff's injury. What is certain is that the plaintiff was at the mill sometime between 7 a.m. and 8 a.m. on October 30, 1984, and was hit on the head with a rice shovel by Droddy and thereby rendered unconscious. After receiving medical treatment the plaintiff filed a claim to receive worker's compensation benefits.
The day before the accident, the plaintiff had received his first paycheck and proceeded to spend the evening drinking with friends at a local bar until 3 a.m. The plaintiff claimed that he reported to work at 6 a.m., apparently quite the worse for wear, as he was in his bare feet and his shirt was unbuttoned. Despite his "hung over" condition, the plaintiff claimed that the foreman instructed him to stay at work and drink coffee, of which the plaintiff allegedly drank several cups. It was during the course of one of these trips to obtain coffee, that the plaintiff claimed he was hit on the head, without provocation, by Droddy. The plaintiff admitted speaking to Droddy but claimed that he was only "shooting the bull" and did not provoke Droddy to strike him. When asked what he said to Droddy, the plaintiff could not remember saying anything in particular. He admitted that his usual remarks to Droddy included profanity and derogatory statements about Droddy's family and in particular such statements as "you old creep."
The testimony of Wilfred Soileau, the mill's owner, differed significantly from that of the plaintiff. Soileau testified that around 7:15 a.m. he heard someone talking in the office next to his. Upon entering the next room, Soileau found the plaintiff in *257 the aforementioned disheveled condition, talking on Soileau's personal business telephone. Soileau asked Lafleur if he had just arrived at work and Lafleur said yes. When asked what he was doing, Lafleur stated that he was "talking to some dudes". Soileau testified that he was close enough to Lafleur to smell alcohol on his breath. Believing that Lafleur was intoxicated, Soileau ordered him to put the phone down and leave the premises. Lafleur left the office and proceeded to the warehouse. Soileau then returned to his office to talk to a trucker who had just arrived. Five minutes later, Soileau attempted to locate his foreman to inform him that Lafleur was drunk and to instruct him to prohibit Lafleur from loitering on the business premises. Before Soileau could do so, Droddy had already struck Lafleur. Lafleur denied being told to leave the premises or even encountering Soileau, although he vaguely remembered using the phone.
There were no witnesses to the encounter between Droddy and Lafleur. Droddy claimed that from the time he started working at the mill two weeks earlier, Lafleur had been making derogatory remarks about Droddy's family. Although Lafleur admitted to some derogatory statements to Droddy, Lafleur denied that he and Droddy did not get along well. According to Droddy, Lafleur's remarks included allegations of affairs between Lafleur and Droddy's wife and daughter.
Droddy stated that Lafleur was not at work at 6 a.m. when everyone else arrived. After Lafleur arrived late, he approached Droddy who was working by a rice conveyor belt in the warehouse. Interspersed with the derogatory remarks of the previous two weeks about Droddy's family, Lafleur had let it be known that he had trained extensively in karate while in the service. Droddy stated that Lafleur approached him from behind. Since he was busy working, Droddy did not notice Lafleur until Lafleur told him he was going to use karate on him. Droddy ignored the plaintiff's threat. At that point, the machine jammed. While the work ceased the plaintiff again threatened to use karate on Droddy. At this point, Droddy warned Lafleur that if he took another step forward towards him he was going to "brain" him with the rice shovel he was holding. Lafleur paused, then took a step toward Droddy. Droddy then hit Lafleur on the head.
In its reasons for judgment the Trial Court found: (1) The injuries sustained by Lafleur did not arise out of, and were not in the course of his employment; (2) Lafleur was told to leave the premises due to his intoxicated condition, which he did not do; (3) Droddy was in genuine fear of his life and limb when he struck the plaintiff; (4) the defenses in La.R.S. 23:1081 were proven by the defendant; and (5) the plaintiff's claim for penalties and attorney's fees was without merit since the claim for worker's compensation was denied by the Trial Court, and there was probable cause for refusing payment.
On appeal, the plaintiff has assigned the aforementioned assignments of error. The first two assignments will be combined into one discussion for the reasons set forth below.

INJURY ARISING OUT OF AND IN THE COURSE OF EMPLOYMENT
The plaintiff initially argues that the Trial Court erred in holding that he was not employed at the time of this accident because he was told by Soileau to leave. However, the Trial Court did not find Lafleur was not employed at the time of the accident. The Court found that the injuries sustained did not arise out of or in the course of Lafleur's employment. The plaintiff has erroneously framed the issue, equating "arising out of and in the course of" with being employed. He has assumed that he adequately carried his burden of proving that his injury arose out of and in the course of his employment and that the burden had shifted to the defendant to prove the affirmative defenses of La.R.S. 23:1081. Our review of this issue will consider whether or not the plaintiff did, in fact, carry this initial burden of proof.
For an employee to receive worker's compensation benefits, the employee must *258 establish that he received a personal injury by an accident arising out of and in the course of his employment. La.R.S. 23:1031; Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). In Raybol v. Louisiana State University, 520 So.2d 724 (La. 1988), our Supreme Court, in analyzing these requirements, recently stated:
The terms arising out of and in the course of constitute a dual requirement. The former suggests an inquiry into the character or origin of the risk while the latter brings into focus the time and place relationship between the risk and the employment. The two requirements cannot, however, be considered in isolation from each other. A strong showing by the claimant with reference to the ariseoutof requirement may compensate for a relatively weak showing on during thecourseof requirement, or vice versa. As a corollary it follows that whenever the showing with respect to both requirements is relatively weak a denial of compensation is indicated. Lisonbee v. Chicago Mill and Lumber Company, 278 So.2d 5 (La.1973) (citing Malone, Louisiana Worker's Compensation, §§ 162, 192 (1st ed.)).
Judicial experience has taught that these two elements, arising out of and in the course of should not be understood as entirely separate requirements to be rigidly and independently exacted. Rather, they should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question of whether the injury bears some significant relationship to the business operation. Lisonbee v. Chicago Mill and Lumber Company, supra, at 9. Malone and Johnson, Workers' Compensation Law and Practice, 13 Civ. Law Treat. §§ 144, 145 (2d ed.). (520 So.2d at 726, 727).
An accident occurs "in the course of employment" within the meaning of the Worker's Compensation Act when it happens during the time of employment and at a place contemplated by the employment. Reid v. Gamb, Inc., 509 So.2d 995 (La. 1987).
Although the plaintiff's injury did occur on the employer's property, the plaintiff had been ordered to leave the work premises. A reasonable period of time is allowed for an employee to enter and leave the work premises such that the employee will be considered within the course of his employment. § 167, Malone, Worker's Compensation Law & Practice, West (1980). The plaintiff cites Livings v. Reliance Ins. Co. and Oakbourne Country Club, 525 So.2d 620 (La.App. 3rd Cir.1988) as controlling in the case sub judice. In Livings the plaintiff's employment at Oakbourne Country Club had just been terminated. She remained on the premises long enough to gather her personal effects and, while still on the premises slipped and fell and sustained an injury. This Court found that the plaintiff was in the course of her employment at the time of the injury and hence, her exclusive remedy was in worker's compensation and not in tort.
In the case sub judice, the plaintiff, even though on the work premises, was taunting his co-employee in contravention of his employer's orders to leave the premises. Unlike the plaintiff in Livings, the plaintiff was not trying to leave the premises when the accident occurred. Even liberally construing the amount of time necessary for an employee to leave the work premises, the plaintiff has only minimally satisfied the "course of employment" requirement that the accident occurred during the time contemplated by his employment. We do not find Livings to be dispositive of this case.
When the employee is clearly in the course of employment because he is actively engaged in the performance of his duties, preparing himself for his work, or taking a short permissible rest from his labors, his injury or death caused by the assault of a third person arises out of his employment regardless of the nature of difficulty that prompted the attacks or the identity of his assailant. Raybol v. Louisiana State University, supra; Malone and Johnson, Workers' Compensation, § 195.
However, if at the time of the aggression the victim was only barely within *259 the course of his employment, it is necessary and proper to determine whether the injury arose out of the plaintiff's employment by looking to whether the circumstances under which the plaintiff worked enhanced the danger of an assault. Raybol, supra; Malone and Johnson, Workers' Compensation § 195. Stated another way, to arise out of the employment, the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. Lisonbee v. Chicago Mill Lumber Co., supra; Mitchell v. Employers Mut. Liability Ins. Co., 341 So.2d 35 (La.App. 3rd Cir.1976), writ denied, 342 So.2d 1121 (La.1977).
In Raybol, supra, the plaintiff, a custodial worker for LSU was attacked by a former boyfriend while she was on duty in a campus dormitory. A motion for summary judgment was granted in favor of LSU. After finding that the plaintiff was clearly acting within the course of her employment at the time of her injury, the Court further concluded that, after interpreting the facts in the light most favorable to the plaintiff, her injuries arose out of her employment for the following reasons: (1) She was squarely within the course of her employment, (2) her employment circumstances enhanced the danger of an assault as she worked in a closed dormitory isolated from co-workers thereby increasing the risk of an attack, and (3) a co-worker contributed to the assault by allowing the assailant access into the building.
None of the circumstances of Raybol, supra, are present in the case sub judice. Initially, the plaintiff here was barely within the course of his employment. Secondly, we can find no circumstances of the plaintiff's employment which enhanced or contributed to the plaintiff's assault by Droddy. The risk of Lafleur receiving an injury due to his own taunting and aggressive behavior cannot, in any way, be considered a risk of his employment. Nothing Lafleur said to Droddy had the slightest relevance to his employment. Lafleur was pursuing his own personal interests, not his employer's business, and his employer's business did not require Lafleur to be in the warehouse when he was assaulted. Hence, there has been no showing of the "arising out of" element to compensate for the weak "in the course of element.
The plaintiff failed to prove that his injury arose out of and in the course of his employment. There was no error by the Trial Judge in this ruling. Therefore, the plaintiff's arguments regarding the defendant's failure to prove the affirmative defenses contained in La.R.S. 23:1081 are inapplicable, as the plaintiff never carried his burden of proof in establishing that his injury was compensable under the worker's compensation statute.

EMPLOYER DEFENSES
Even had the plaintiff overcome his initial burden of proof, we find that the Trial Court did not err in holding that the defense established in La.R.S. 23:1081(1)(a) was proven by the defendant.
La.R.S. 23:1081(1)(a) provides:
DEFENSES.
(1) No compensation shall be allowed for an injury caused:
(a) by the injured employee's willful intention to injure himself or to injure another, or ...
In Velotta v. Liberty Mut. Ins. Co., 241 La. 814, 132 So.2d 51, (1961) the Court interpreted this employer defense. In Velotta, the plaintiff was a janitor in a locker room where employees changed their uniforms. While changing clothes, one Bailey referred to Velotta as "Shorty" and Velotta referred to Bailey as "Boy". Velotta threw a pair of pants at Bailey and Bailey struck Velotta in response. The Court stated that besides willful intent to injure, there must be some premeditation or malice coupled with a reasonable expectation of bringing about a real injury to himself or another. Impulsive behavior, such as Velotta throwing pants at Bailey, though not condoned, will not bar recovery of compensation since it is not conduct sufficiently serious or grave to show a willful intent to injure. However, if the conduct is serious *260 enough, whether impulsive or not, recovery may be denied because of a reasonable expectation that the affray would result in injury. Relish v. Hobbs, 188 So.2d 479 (La.App. 3rd Cir.), writ denied, 249 La. 737, 190 So.2d 242 (1966).
In the case sub judice, the Court found that Lafleur's injury was the result of his own willful intention to injure Droddy. Droddy testified that Lafleur threatened to use karate on him. Lafleur denied ever mentioning karate to Droddy. The Trial Court chose to believe Droddy, which is a credibility determination that rests largely with the Trial Court. Till v. Delta School of Commerce, Inc., 487 So.2d 180 (La.App. 3rd Cir.1986). Droddy testified that he had served as a Marine in Korea, and knew that one skilled in karate could kill his opponent without the use of any weapon. Droddy, a middle-aged man, maintained that although he would have tried to defend himself, he was in fear of his safety once the younger man threatened him. For that reason, he chose to end the confrontation before Lafleur could strike him.
Lafleur threatened to assault Droddy and there was a reasonable expectation on Droddy's part to believe that Lefleur would carry out his threat. Accepting Droddy's testimony that the two did not get along well, these ill feelings coupled with the overt threat amounts to premeditation or malice with a reasonable expectation of bringing about a real injury. Relish, supra. Taking all this into consideration, the defendant has sustained his burden of proof under La.R.S. 23:1081(1)(a).
There is no reason to reach the other issues of intoxication and penalties and attorney's fees, as the Trial Court's judgment is affirmed for the aforementioned reasons.
For the foregoing reasons, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.