398 So.2d 1262 (1981)
Allen J. LANDRY
v.
BENSON AND GOLD CHEVROLET et al.
No. 12216.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1981.
*1263 Edgar N. Quillin, Arabi, for plaintiff-appellant.
Edward P. Lobman, Burt K. Carnahan, Metairie, for defendant-appellee.
Before REDMANN, BARRY and KLIEBERT, JJ.
KLIEBERT, Judge.
Allen J. Landry, plaintiff-appellant (hereafter Landry), filed a workmen's compensation claim arising from injuries allegedly received from an auto accident which occurred while enroute to work. The trial judge dismissed the case on a motion for a directed verdict. Plaintiff appealed.
Landry was employed as a used car salesman by defendant-appellee, Benson and Gold Chevrolet, Inc. (hereafter Benson & Gold). In connection with his employment, Benson & Gold, his employer, provided Landry with a demonstrator automobile for his personal and business use. On April 17, 1979, Landry was driving his demonstrator automobile from his home in Caernarvon, St. Bernard Parish, Louisiana, enroute to the Benson & Gold car lot in New Orleans when, as he reached the Town of Violet (which was along the route in St. Bernard Parish), he remembered that he had left some folders containing pending car sales at home. Landry turned around and started back to Caernarvon. On the way to his home, Landry stopped at a stop sign behind a cement truck owned by JACAT Corporation (not a party to this suit). The cement truck rolled backwards, struck the hood of Landry's automobile, and left the scene of the accident. Plaintiff pursued the truck to its destination at an unspecified job site approximately two miles from the accident site. There he had to wait approximately forty-five minutes in warm weather before he was able to learn the driver's identity and obtain his driver's license number.
Landry contends he was in the course and scope of his employment when the accident *1264 occurred and that the accident aggravated a pre-existing heart condition, making him now permanently and totally disabled. The trial court concluded Landry was not in the course and scope of his employment at the time of the accident and dismissed Landry's suit on a motion for a directed verdict.
On appeal, appellant argued that the trial court erred in granting a directed verdict. He grounded his contention in the argument that an employee who is routinely furnished transportation to and from work as part of his employment agreement is within the course and scope of his employment and, hence, is covered by workmen's compensation if an accident befalls him while going to and from work by means of the furnished transportation.
Landry was employed as a commission salesman. On trial he described his job as being a "twenty-four hour a day" job. He testified his duties were to attend meetings, "hustle" car sales and give out business cards. Under cross-examination, Landry admitted that at most he had only worked eight hours a day at the Benson and Gold car lot immediately prior to the accident.
In connection with his employment as a car salesman, Landry was furnished a demonstrator automobile by Benson and Gold. The demonstrator had both a dealer's plate and a Benson & Gold bumper sticker on it. Landry's use of the demonstrator was governed by a demonstrator agreement which was admitted into evidence. The agreement was signed by both Landry and Benson & Gold's General Sales Manager. The pertinent parts of the agreement follow:

DEMONSTRATOR AGREEMENT
1. MAINTENANCE: I agree to exercise the highest care and consideration in the operation and maintenance of the unit assigned me. The company will maintain the unit except for wash and oil change which will be my responsibility, following normal schedules for such maintenance.
2. INSURANCE: I agree to accept responsibility for the $200.00 deductible portion of the company's insurance coverage for any collision loss.
3. USAGE: I agree that the demonstrator is for my use in the conduct of company business and personal use. However, this only includes within a 100 mile radius. Any trips out of the 100 mile radius must be approved by the General Sales Manager.
* * * * * *
Each individual driving a co-owned vehicle will be furnished with a copy of the invoice pertaining to the unit being driven. You are encourage(d) to sell the unit. The result will mean more rapid turnover of company cars and more efficient operation.
Defendant-appellee contends Landry was outside the course and scope of his employment at the time of the accident, and thus was not within the ambit of the workmen's compensation statute. The general rule is that employees going to or returning from work are not covered by the workmen's compensation law. This rule, however, has several exceptions, including that which holds an accident as being compensable when it occurs on a trip which is reasonably contemplated by the contract of employment as being one which the employee would make in the interest of his employer's business or whenever the employer has interested himself in the transportation to and from work as an incident to the employment agreement. Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3rd Cir. 1970), writ denied 256 La. 894, 240 So.2d 231 and citations therein; Belvin v. Cali, 325 So.2d 897 (La.App. 4th Cir. 1976) and citations therein. Thus, under the rationale of these cases, the issue is a factual one. Do the facts show the transportation as an incident to the employment?
Even though Landry was allowed to use the demonstrator for personal use (which he admitted doing) the fact remains that the car was a company-owned vehicle, with all of the maintenance (except oil changes and washes) and insurance being furnished by the company. In addition, the fact that the car had a bumper sticker on it *1265 which provided constant public exposure for Benson & Gold (which was part of Landry's job duties) cannot be overlooked. Even more important, however, is the clause in the demonstrator agreement which states the central purpose of furnishing the automobile, which is "You are encourage(d) to sell the unit." In essence, Landry was under an obligation to attempt to sell the demonstrator while using it. We also note that Landry was returning to his home to pick up folders needed in his work when the accident occurred.
The foregoing facts lead us to the conclusion that Landry was on a trip which was reasonably contemplated by the employment contract as being a trip made in the interest of Benson & Gold's business. Therefore, we hold Landry was acting in the course and scope of his employment at the time of the April 17, 1979 accident and, hence, within the ambit of the compensation statute.
This leads us to a determination as to whether, on the evidence presented, there was causation between the accident and Landry's disability.
Dr. Frederick A. Pou, an expert in internal medicine, was Landry's treating physician for several years prior to the accident. Dr. Pou related Landry's history of angina pectoris since 1970 with Landry having frequent episodes of severe angina "off and on" during that period. Landry had been hospitalized from March 14, 1970 to March 26, 1979 for angina and mild cardial infarction and on the April 2, 1979 visit to Dr. Pou (the last visit prior to the accident) Landry related having occasional mild chest pains. However, Dr. Pou's records reflected nothing about plaintiff's April 17, 1979 accident. In fact, the first time plaintiff saw Dr. Pou after the accident was on April 24, 1979. On that date, Landry told Dr. Pou that he was feeling better than he had felt on April 2, 1979 (the last visit before the accident). Dr. Pou's clinical findings on April 24, 1979 were basically the same as prior to the accident. It was Dr. Pou's opinion that the April 17, 1979 accident did not aggravate Landry's heart ailment.
Landry saw Dr. Emile Bertucci at the St. Bernard Medical Clinic in Chalmette on November 20, 1979. He did not personally appear and testify; but, his report of November 20, 1979 was introduced into evidence. Although the report mentions the accident as part of Landry's medical history, it does not attribute the accident as a cause or a contributory factor to Landry's disability.
In order to recover workmen's compensation benefits, plaintiff must show (1) an accident, (2) a disability, and (3) a causal connection between the accident and disability, Cormier v. Aetna Insurance Company, 368 So.2d 461 (3rd Cir. 1979).
As in Cormier, supra, the testimony in this case clearly indicates that the accident did not affect Landry's disability. There is no medical evidence to establish the necessary causal relationship. The only hint of causation was Mr. Landry's testifying to feeling "anxious" immediately after the accident and taking nitroglycerin pills from the date of the accident until he saw his doctor one week later.
Appellant argues that, under the jurisprudential rule most recently stated in Allor v. Belden Corporation, 393 So.2d 1233 (La.1981), on the issue of causation, a worker is entitled to the benefit of a presumption in cases such as this. Allor states, at 1236
"... If an otherwise healthy worker suffers an accident at work and is thereafter disabled, it is presumed that here is a causal connection between the two, so long as the medical evidence establishes a reasonable possibility of such a connection. (citations omitted)."
Allor is inapplicable herein. Landry was not a healthy worker prior to the accident and there is no medical evidence which establishes a "reasonable possibility" of a connection between the accident and the disability. Accordingly, we hold that although Landry came within the ambit of the Workmen's Compensation Act, he failed to show a causal connection between the accident and the disability.
*1266 For the foregoing reasons, the judgment of the trial court is affirmed, costs of appeal to be borne by appellant.
AFFIRMED.
BARRY, J., concurs with written reasons.
BARRY, Judge, concurs.
I concur in the result because there is insufficient medical evidence to prove that the employee's pre-existing heart condition was aggravated by the accident.