425 So.2d 881 (1983)
John REYNOLDS
v.
The BE-NEAT TANK CLEANING CORPORATION, et al.
No. CA 0091.
Court of Appeal of Louisiana, Fourth Circuit.
January 3, 1983.
Richard M. Goldman, New Orleans, for appellant.
Dillon & Cambre, Gerard M. Dillon, New Orleans, for appellee.
Before SCHOTT, CIACCIO and WILLIAMS, JJ.
CIACCIO, Judge.
Plaintiff appeals from a judgment of the district court which dismissed his claim for workmen's compensation.
The suit arose out of the following facts:
*882 In November, 1979, plaintiff, John Reynolds, was employed as an onshore and offshore equipment and material clean-up worker for the defendant, Be-Neat Tank Cleaning Corporation. At the time, the defendant company was under contract to Chevron Oil Company and was engaged to clean oil tanks in Buras, Louisiana. The job lasted thirty (30) days and during the time of the operation the defendant's work crew was based in Buras, Louisiana, at a local motel. The crew was supervised by the owner of the defendant company, Joe Benitte, Jr. and his son-in-law, Joe Druant. The workers were paid for on the site duty, that is, from 6 a.m. until 6 p.m. each day, with their work day beginning at the motel. The plaintiff earned five ($5.00) dollars per hour. In addition to the hourly wage, each crew member received ten ($10.00) dollars per day for sustenance. This sum was generally used for breakfast and dinner, as their employer provided sandwiches for the crew's daily lunch.
On November 9, 1979, the date of the accident, plaintiff and the crew had been in Buras, Louisiana for three (3) days and they were lodged at a motel near the job site. The motel did not have laundry facilities and the nearest laundromat was five (5) miles from the motel. The plaintiff and his fellow workers returned to their motel rooms after work. The plaintiff showered, dressed, picked up his clothes and travelled by company truck, with his fellow workers, to a local cafe for supper. Plaintiff, following supper, borrowed the keys to a company truck from one of his supervisors. He was instructed by the supervisor not to lend the truck to anyone. The plaintiff and two crew members proceeded by truck to the laundry to wash their clothes. At approximately 8 p.m., while in the laundry, the plaintiff and his fellow worker, Warren Griffith, became involved in an altercation. The incident was witnessed by a third employee, Christopher Parker. Immediately before the confrontation, Griffith had requested that Reynolds give him the keys to the truck so that he could secure his radio from the front seat of the vehicle. Reynolds refused to give over the keys, as he recalled the directive of his boss that he should not lend the truck to anyone. Griffith struck the plaintiff and a two minute fight ensued. The plaintiff sustained a broken jaw and facial injuries. The eyewitness, Christopher Parker, called their supervisor, Joe Druant, to inform him of the incident. Mr. Druant hitchhiked to the laundry and then drove the plaintiff to the hospital in the company truck.
The plaintiff filed suit to recover workmen compensation benefits, claiming that his injuries were work-related.
After trying the issue of liability, pursuant to a joint stipulation for a bifurcated trial, the district court dismissed the plaintiff's suit. The district court rendered the following reasons for judgment:
Plaintiff was not in the course and scope of his employment at the time of the fight. The affair was after normal working hours, and the mission was purely personal. The limitation placed on plaintiff's use of the truck were not job related instructions, but rather were the typical conditions any owner might properly impose when loaning his vehicle to another.
Plaintiff's action will be dismissed.
On appeal, plaintiff argues that his accident arose out of and was in the course of his employment, in that his injuries occurred while he was performing a function which was incidental to his employment and reasonably contemplated by his employment contract. He reasons that his injuries occurred at a laundry facility which was used by the workers of the defendant for the cleaning of their work clothes and it occurred while the plaintiff was using his employer's truck and while he was under specific instructions from his employer regarding the use of the truck. Therefore, he concludes plaintiff's actions were "undertaken pursuant to custom in the establishment and that it was knowingly accepted, without objection by those in authority." We do not agree.
An employee shall be entitled to compensation if he "receives personal injury by *883 accident arising out of and in the course of his employment." R.S. 23:1031. The "arising out of" and "during the course of" elements of the statute are not synomyous, but must be considered together. Lisenbee v. Chicago Mill & Lumber Co., 278 So.2d 5 (La.,1973); Renfroe v. City of New Orleans, 394 So.2d 787 (La.App., 4th Cir., 1981), writ den. 399 So.2d 621. In making a determination whether the employee has satisfied the requirements necessary to receive compensation, each case must be determined by its own facts. Lisonbee v. Chicago Mill & Lumber Co., supra.
The "arising out of" requirement of the statute deals with the character or origin of the risk. R.S. 23:1031. Lisonbee v. Chicago Mill & Lumber Co., supra; Brumfield v. Patterson & Yearly Steel Co., 416 So.2d 217 (La.App., 1st Cir., 1982); Renfroe v. City of New Orleans, supra. In order to determine if an employee experienced an accident "arising out of" his employment, there must be a two-fold inquiry: first, it must be determined whether the employee was then engaged in the employer's business and secondly, whether the necessities of the employer's business reasonably required the employee to be at the place of the accident at the time of the accident. Guidry v. Serigny, 378 So.2d 938 (La.,1979); Renfroe v. City of New Orleans, supra. That is, the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. Lisonbee v. Chicago Mill & Lumber Co., supra.
The "during the course of" element of the compensation statute, brings into focus the time and place relationship and the employment. R.S. 23:1031. Renfroe v. City of New Orleans, supra; Brumfield v. Patterson & Yearly Steel Co., supra. Therefore, an accident occurs "during the course of" employment, for purposes of the Louisiana Compensation statute, when it occurs during the time of the employment and at a place contemplated by the employment. Lisenbee v. Chicago Mill & Lumber Co., supra; Renfroe v. City of New Orleans, supra. Thus, the general rule is that the accident must occur during normal working hours and at the employee's place of work. Brumfield v. Patterson Yearly Steel Co., supra, citing Kern v. Southport Mill, 174 La. 432, 141 So. 19 (La.1932). It is for this reason that an employee is generally not covered by the workmen's compensation statute when he is injured while going to or returning from work. Landry v. Benson Gold Chevrolet, 398 So.2d 1262 (La.App., 4th Cir., 1981). This general rule is subject to a number of jurisprudentially established exceptions. The exceptions exist: (1) when the accident occurs on a trip which is reasonably contemplated by the contract of employment as one which the employee would make in the interest of his employer's business, (Landry v. Benson Gold Chevrolet, supra.) (2) when the accident occurs where the employer has interested himself in the transportation of the employee to and from work as an incident to the employment agreement, (Landry v. Benson Gold Chevrolet, supra); (3) when the employee is acting pursuant to an order of the employer (Stephens v. Justiss Mears Oil Co., 312 So.2d 293 (La., 1975); or (4) where the employee was doing his work under the circumstances where the employer's consent could be fairly implied. (Stephens v. Justiss Mears Oil Co., supra.) Ultimately, a determination of whether an employee is engaged in a purely personal endeavor or is acting within the course of his employment will depend upon the facts of the particular case. Renfroe v. City of New Orleans, supra. The further removed the facts are from the general rule in terms of time and place, the more likely it is that the result will become an estimation on the part of the trier of fact. Brumfield v. Patterson & Yearly Steel Co., supra, citing Malone & Johnson, "Workmen's Compensation Law and Practice" p. 24-25.
The trial court found that the accident occurred after normal working hours and while plaintiff was on a purely personal mission. The record supports these findings.
*884 The nature of the defendant's business was onshore and offshore equipment and material clean-up. The business involved tank, boiler and ship cleaning, pipe flushing and hydroblasting.
On the date of the accident the plaintiff was employed as an oil tank cleaner on an oil tank farm in Buras, Louisiana. The job was contracted on a firm bid basis and Chevron Oil Company determined the days and hours of work. The crew worked seven days a week. They were paid while on the job site, that is, from 6 a.m. to 6 p.m.
Plaintiff's accident occurred between 8 8:15 p.m. on the night of November 9, 1979 while he was engaged in cleaning his clothes at the laundry. Thus, the accident occurred after normal working hours, away from the employee's place of business, when plaintiff was not performing a traditional work activity.
In an attempt to find refuge in the threshold doctrine, the plaintiff argues that the inherent nature of his job and its working conditions required his trip to the laundry. He reasons that since the job was inherently dirty and the location necessitated him being away from home, at a motel, that did not provide laundry facilities, that his trip to the laundry was one reasonably contemplated by his employment. He adds that it was in the interest of his employer, for in addition to his own clothes, he took those of his supervisor to be washed.
The record does not support the plaintiff's position. The exhibit introduced at trial, by the defendant, evidences the fact that although the job was dirty, the men's clothing was protected by rubber oversuits. (D-1). Moreover, the job superintendant, Joe Benitte, Jr., testified that the degree to which any member of the crew became dirty varied from one individual to another. He testified that the company had never before made provisions for the men's laundry while they were out of town. Contrary to the allegations of the plaintiff, Mr. Benitte stated that he did not give his clothes to the plaintiff to wash, nor did any of his supervisors. He further stated that he had never driven anyone to the laundry, nor to his knowledge had any other foreman done this. Mr. Benitte's testimony was corroborated by Joe Druant.
The plaintiff next argues that he used a company truck to travel to the laundry and that the accident occurred because he was responding to an order of his supervisor not to lend the truck to anyone.
Mr. Benitte testified that he had on occasion loaned job trucks to men while they were working on out of town jobs, in order that they could attend to their personal needs. He stated that he knew, from past experience, that the plaintiff was a reliable driver. He testified that he instructed the plaintiff not to loan the vehicle to anyone. Mr. Benitte also testified, unequivocally, that he was asked by the plaintiff, on a personal basis, to borrow the truck to go to the laundry and that he lent the truck to the plaintiff, on a personal basis. On this issue of credibility, the trial judge apparently believed the job supervisor, Joe Benitte.
Accordingly, the trial court correctly concluded that the plaintiff's accident and resultant injuries did not occur within the course and scope of his employment and thus, the plaintiff was not entitled to benefits under the Louisiana Workmen's Compensation Act. R.S. 23:1021 et seq. We find no error with the judgment of the trial court.
For the reasons assigned the judgment of the district court is affirmed at plaintiff's cost.
AFFIRMED.