LOBRANO, Judge.
Plaintiff-appellee, Arthur P. Leinweber, Jr., was employed continuously by defendant-appellant, Chevron Chemical Co., at its Belle Chasse chemical plant from February 25, 1957, until he became disabled in January of 1976, as a result of an accident he sustained on March 14, 1975. On that date he slipped on a steel deck and injured his left wrist, arm and back. The injuries to his left wrist and arm healed, but the damage to his back did not. In January of 1976 appellee underwent a laminectomy and repair of the L4-5 intevertebral disc; in March of 1976, appellee was again hospitalized and underwent a second surgical procedure, at which time it was noted that inflammation in the disc space had caused a fusion of L4 and L5. Further repair was carried out at that time. Appellee recuperated, and by September 1976 his treating surgeon suggested that he return to work in a modified job assignment, avoiding protracted standing, sitting, squatting and lifting over fifteen to twenty pounds. He was encouraged to do work involving alternate sitting and standing, walking, and modest bending and driving. Appellant refused to return appellee to work, despite his persistent efforts to be allowed back in a job that he could perform. Instead, appellant paid appellee the $65.00 per week maximum workmen’s compensation benefit and placed appellee on long term disability benefits provided by its insurance program.
In April of 1977, plaintiff-appellee was hospitalized by Dr. Llewellyn for the purposes of investigating his complaints of neck and shoulder discomfort. Appellant refused to pay the hospital and medical expenses, contending first that the treatment was not for injuries sustained in the 1975 accident. After having appellee examined by its orthopaedic surgeon, appellant contended that its medical payments liability was limited to $12,500.00 under the Workmen’s Compensation Law as it existed at the time of the 1975 accident. (La.R.S. 23:1203, before it was amended in 1975). Since appellant had already paid an amount in excess of the $12,500.00, it refused to pay the medical expenses incurred in plaintiff-appellee’s treatment in April and May of 1977.
Accordingly, appellee was required to file a law suit under the provisions of Section 1203, supra. Appellee was paid a total of $2,135.00 in consideration of his agreement to dismiss that law suit. That payment consisted not only of all of the medical expenses appellee claimed, but also included attorney’s fees of twenty percent of the medical payments and the payment of all court costs.
Defendant-appellee continued paying plaintiff-appellee $65.00 each week, and ap-pellee also received his long term disability benefits. However, as the trial court found, after appellee had received twenty-four months of long term disability benefits, those benefits were terminated because he did not meet the total disability requirement. In fact, appellee asserted that he was capable of performing several other jobs available at the defendant-appellant’s plant. For this reason, appellee resisted his *889 termination by defendant and was successful in pursuing a grievance by which his collective bargaining agent initiated an arbitration proceeding claiming that appellee could not be terminated, but had to be offered a job he could perform. The award ordered defendant-appellant to reinstate appellee and give him a reasonable trial to determine if he could perform the job of storeroom clerk (preferable), toolroom attendant, grove (small portable crane vehicle) operator or any other appropriate job assignment which he is qualified to perform and may claim by virtue of his seniority. Contrary to the arbitration award, appellee was not offered the jobs above referred to, but was simply returned to his regular duties as a mechanic at the chemical plant.
On January 30,1981 plaintiff sustained a second injury involving his back, but continued to perform his regular work until March 6, 1981. Plaintiff testified that he was sent to do a job next to the maintenance office to remove a high pressure steam valve. The job involved removing rusty bolts, some of which had to be hack-sawed off. While appellee was pulling on a flange wrench he attempted to rise from working in a stooped position and suffered the injury which was later diagnosed as a ruptured intevertebral disc between L5 and SI. He reported the accident to his foreman, Charles Capdeville. Appellee testified that the company doctor, Dr. Serio, put him on light duty, but appellant refused to allow appellee to continue to work and sent him home.
During this period, appellee was seeing Dr. Serio, and the company also had him examined on two different occasions by Dr. Redler. Appellee finally returned to his own physician, Dr. Llewellyn, who advised him not to work any further, and to be hospitalized for investigation of his complaints.
Appellant refused to recognize that plaintiff had indeed sustained a new accident, and insisted that his medical benefits had been exhausted under the 1975 accident, and began paying him the $65.00 per week maximum compensation benefit available for his 1975 accident. Appellee was admitted to Hotel Dieu Hospital in April of 1981, and after the appropriate diagnostic procedure had been performed, the diagnosis was that the appellee was suffering from a bulging disc in the L5 — SI space. Dr. Llewellyn operated upon appellee and removed a bilaterally herniated disc in the L5-S1 intevertebral space. The previous operative site at L4-L5 was found to have been completely fused and had no pathological scarring; the only pathology found was the obviously herniated disc at L5-S1, which was completely removed. Appellant refused to pay the hospital bill for that surgery.
Thereafter, appellee through his attorney, made due demand upon defendant-appellant by letter to the Personnel Manager at its Belle Chasse plant for the workmen’s compensation benefits to which he was entitled, and for the payment of his medical expenses. The letter recited the fact that Dr. Llewellyn’s diagnosis was “primary disc rupture at L5-S1, post-injury, in a patient with previous decompressive laminectomy of L4-L5 and of lumbar arachnoiditis.” Everything requested by defendant-appellant was supplied. On October 6, 1981, appellee’s counsel again wrote defendant’s attorney, reciting in detail, the protracted efforts made throughout the summer to obtain the payment of appellee’s medical bills and to increase the workmen’s compensation payments from $65.00 per week to $163.00 per week, the rate applicable with regard to his second accident. No response followed, and on November 19, 1981, this suit was filed.
The District Judge found that plaintiff-appellee did indeed suffer an accident on January 30,1981, which rendered him totally and, for all intents and purposes, permanently disabled. The trial judge took into consideration the reports of Dr. Redler, who examined plaintiff before he was allowed to return to work in September 1980 and found that plaintiff “has carried his burden of proving by a preponderance of the evidence that he suffered an accident on January 30, 1981, while performing a hazardous *890 duty in the course and scope of his employment by the defendant, and his present total and permanent disability is a result of that accident.” From this judgment, defendant-appellant appeals.
Appellant asserts four specifications of error:
1) The trial court erred and “misdirected itself” in ruling that appellee was totally and permanently disabled because of the 1981 accident and that the 1981 injury was not a continuation of the 1975 injury.
2) The trial court erred “as a matter of fact and law” that appellee was entitled to medical expenses in the amount awarded as well as future medical, surgical and hospital services.
8) The trial court erred in holding that appellant acted in an arbitrary and capricious manner thus awarding penalties and attorney’s fees.
4) The trial court erred in awarding a testimonial fee to Dr. Llewellyn and costs of court.
The primary issue before this court is whether appellee sustained a second new injury on January 30, 1981 or was this injury a continuation of his back problems arising out of an injury sustained in 1975 and, possibly two motor vehicle accidents in 1964 and 1967.
The reasons for judgment clearly set forth the trial judge’s conclusion that plaintiff-appellee established by a legal certainty that he suffered an accident on January 80, 1981, during his employment and that his present disability is a result of that accident. Appellant must demonstrate that the trial judge committed manifest error in his assessment of the evidence, and in his evaluation of the witnesses’ credibility. Canter v. Koehring, 283 So.2d 716 (La.1973); Crump v. Hartford Accident and Indemnity Co., 367 So.2d 300 (La.1979); Brooks v. Roussel, 384 So.2d 576 (La.App. 4th Cir. 1980).
While certainly we cannot question the testimony of Dr. Brown that in his opinion appellee’s back condition predated his January 30, 1981 injury, it was the trial judge’s decision to accept the testimony of Dr. Llewellyn over his. Certainly the fact that Dr. Brown’s opinion was based on the examinations and objective findings of Dr. Redler,[1] rather than his own lends weight to the correctness of the trial judge’s conclusion. Further, Dr. Redler found on September 21, 1980 that appellee’s condition from the 1975 accident had improved to the extent that he (appellee) could return to his usual work activities, and he so recommended to appellant. We find no direct contradictory evidence to rebut Dr. Llewellyn’s opinion of a L5-S1 rupture as a result of the second accident.
Appellant further suggests that the accident of January, 1981 was unwit-nessed and that the trial court should not have given weight to appellee’s testimony. It is well established that an employee’s testimony alone is sufficient to establish the occurrence of an accident if it is found that such testimony is plausible, consistent and supported by corroborating evidence, Gurry v. Allied Metals, Inc., 379 So.2d 871 (La. App. 4th 1980) and Newell v. New Orleans Public Service, Inc., 402 So.2d 246 (La.App. 4th 1981). The trial court was more than satisfied that appellee proved the accident on January 30, 1981 and that this accident caused his present total and permanent disability. We find no manifest error on the part of the trial court.
Appellant asserts that the trial court erred in imposing statutory penalties and attorney’s fees by holding that appellant acted in an arbitrary and capricious manner and without probable cause in failing to pay compensation and medical expenses under the Workmen’s Compensation Act in effect in January 30, 1981.
La.R.S. 23:1201.2 requires any employer whose liability for claims under the Work *891 men s Compensation Law is not covered by insurance to pay the amount of any claim due within sixty days after receipt of written notice. Failure to make such payment within that time when such failure is found to be arbitrary, capricious and without probable cause, subjects the employer to a penalty of twelve percent of the total amount of the claim payable to the claimant and “all reasonable attorney’s fees for the prosecution and collection of such claim.... ” The instant case is directly on point with this court’s opinion in Montreuil v. Winn Dixie Stores, Inc., 279 So.2d 701 (La.App. 4th 1973), wherein an award of penalties and attorney’s fees were affirmed because defendant presumed plaintiff suffered a recurrence of his back problem rather than another accident. This court held that defendant’s presumption was made without any basis in fact. This is precisely the same as the present case. Appellant presumed appellee’s disability was a progression of earlier injuries, despite the positive evidence presented by Dr. Llewellyn to the contrary. Appellee’s attorney’s letter of June 24,1981 officially made his demand very clear. Until suit was filed on November 19, 1981, appellant at no time advised appellee that his claim was being denied. Appellee submitted each and every item requested by appellant with regard to his medical treatment. None of these charges were paid. Thus, we find no manifest error in the trial court’s finding that appellant acted in an arbitrary and capricious manner and affirm the awarding of statutory penalties and attorney’s fees.
Further, we find no manifest error in the amount of expert fees awarded in this matter.
AFFIRMED.

. Dr. Brown testified from the reports, notes and records of Dr. Redler, his partner, who was hospitalized at the time of trial.