BYRNES, Judge.
This is a workmen’s compensation claim. Curtis Robinson, plaintiff-appellant, appeals from a judgment of the Civil District Court for Orleans Parish, denying him workmen’s compensation benefits for injuries which he allegedly sustained in the course and scope of his employment. At trial, the parties entered into stipulations regarding the amount of plaintiff’s medical bills and the fact that he was totally and permanently disabled as a result of the incident. The trial court specifically found that plaintiff’s injuries and resulting disability did not occur while he was in the course and scope of his employment, and did not arise out of that employment. We affirm these findings.
FACTS
When appellant sustained his injuries on November 5, 1981, he was a truck driver for F. Strauss and Son, Inc. His responsibilities included delivering cases of liquor to Strauss’ customers in the New Orleans metropolitan area.
On the morning of November 5, Robinson picked up his assistant, Zad Dial, and began making deliveries. Shortly thereafter, he noticed that he had forgotten his driver’s license. Robinson called in to his supervisor to inform him of the situation, and was told that he could return home to retrieve it. He did so, but was unable to locate the license, and continued on his route.
Later that day, at approximately 6:45 p.m., appellant again returned to his home ostensibly to find his license. His assistant remained in the truck while appellant proceeded to walk to his house. Before he reached his home, Herbert Lee, Robinson’s neighbor, fired a sawed off shotgun at appellant, striking him in the leg. Lee was ultimately convicted of aggravated battery and sentenced to seven years at hard labor.
Lee and the appellant had previously argued over Lee’s girlfriend and Lee had threatened Robinson. On the evening of November 5 Lee carried out his threat by shooting appellant in the left leg resulting in the leg being amputated above the knee.
ASSIGNMENTS OF ERROR
Appellant’s five assignments of error, involved the judge’s determination of whether he was in the course and scope of his employment when injured and whether the injuries received arose out of his employment.
Generally, an employee is entitled to compensation benefits if he is injured as a result of an accident which arises out of his employment provided it occurred in the course of that employment. R.S. 23:1031; Lisonbee v. Chicago Mill and Lumber Co., 278 So.2d 5 (La.1973); Reynolds v. Be-Neat Tank Cleaning Corp., 425 So.2d 881 (La.App. 4th Cir.1983). Each case must be considered on a case by case basis in the context of the facts and circumstances which may be peculiar to that particular situation. Lisonbee v. Chicago Mill and Lumber Co., supra.
In Lisonbee v. Chicago Mill and Lumber Co., supra, at page 7, the Court held:
An accident occurs during the course of the employment when it occurs during the time of employment and at a place contemplated by the employment.
It was established at trial that appellant generally completed his deliveries by 7:00 p.m. He was shot at 6:45 p.m., with two deliveries remaining to be made on his route. Appellant’s injury was clearly sustained “during the time of employment.” Therefore, we must determine whether it occurred “at a place contemplated by the employment”.
In connection with this element, appellant submits that, because he received express permission from his supervisor to return home to retrieve his license, he did not violate company rules when he did so a second time at 6:45 p.m. He contends that he was home with the express knowledge *286 and consent of his supervisor and was therefore at a place contemplated by his employment. This, he argues, established that he was in the course of his employment at the time of the injury.
It is undisputed that appellant obtained permission that morning to return home to retrieve his license. In fact, he did so at approximately noon. Unable to locate the license, he continued on his route. He did not inform his supervisor that he had failed to locate the license. He returned home again, at 6:45 p.m., allegedly to find his driver’s license.
The record establishes that company rules prohibited drivers from detouring off their routes without the express permission of their supervisor. Furthermore, in the past drivers had been dismissed for such conduct. Given this strict company policy, it seems clear that if a driver returned home for a specific purpose, with express permission and that purpose is not accomplished, the driver would have to inform his supervisor and obtain further permission to return home again. Appellant’s failure to obtain permission for the second stop leads us to conclude that he was not at a place contemplated by employment at the time of the shooting.
The trial judge found further that, appellant’s second trip home was probably for the purpose of confronting his neighbor and not to retrieve his license. This determination is amply supported by the record. Appellant had related the story of his disagreement with his neighbor to his assistant. He stated that he had to find his neighbor to discuss it with him. The record also shows that on appellant’s first stop at his home, he told the neighbor’s girlfriend that he was looking for the neighbor and would return. Finally, appellant had only two deliveries remaining when he returned home at 6:45 p.m. He could easily have completed the deliveries and then returned home to thoroughly search for the license. These circumstances clearly support the trial court’s finding that appellant’s second trip home was most likely personal in nature.
Appellant argues that regardless of company rules, a driver’s license is a necessary tool for the successful completion of his job. We would agree that a truck driver needs his driver’s license in order to legally drive his truck. However, as appellant had completed all but two deliveries without the license we cannot say that the lack of his license stopped him from performing his duties or excepted him from complying with company policy.
Appellant also failed to meet the burden of proving that his injury arose out of his employment. In Reynolds v. Be-Neat Tank Cleaning Corp., supra. The court stated:
[T]he accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. 425 So.2d at 883.
It must be shown that the injured employee had endured greater risk of sustaining the injury than an average person who is not so employed. Lisonbee v. Chicago Mill and Lumber Co., supra.
F. Strauss and Son, Inc., is a wholesale liquor dealer. Appellant is a driver for F. Strauss and Son, and his duties involve delivering cases of liquor to various restaurants and bars in the New Orleans metropolitan area. Appellant was shot in the leg by his neighbor with whom he was involved in a personal dispute while he was on a personal mission. Had appellant been employed in any other capacity and had he returned home at 6:45 p.m. on November 5, 1981, for any reason, he would have been shot by his neighbor. Therefore, his employment for appellee did not place him at any greater risk than had he not been so employed. Hence, his injury did not arise out of his employment for appellee.
CONCLUSION
Appellant has not shown that the Trial Judge was manifestly erroneous in his determinations at trial. See Leinweber v. Chevron Chemical Oronite, 427 So.2d 887, *287 888 (La.App. 4th Cir.1983). Appellant’s injury did not arise out of his employment. Accordingly, benefits were properly denied and we affirm the judgment of the Trial Court.
Costs of this appeal are to be borne by appellant.
AFFIRMED.
GARRISON, J., dissents with reasons.