308 So.2d 907 (1975)
Roy BOBO et ux., Plaintiff-Appellee,
v.
SEARS, ROEBUCK AND COMPANY, Defendant-Appellant.
No. 12530.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1975.
*908 Wilkinson, Carmody & Peatros by John M. Madison, Jr., Shreveport, for defendant-appellant.
Lunn, Irion, Switzer, Johnson & Salley by Jack E. Carlisle, Jr., Shreveport, for plaintiff-appellee.
Before BOLIN, PRICE and DENNIS, JJ., concurring.
PRICE, Judge.
Defendant, Sears, Roebuck and Company, appeals from a judgment awarding plaintiffs, Roy and Donna B. Bobo, damages for injuries to Mrs. Bobo which occurred when part of a cracked mirror in a dressing room in the Sears Bossier store fell off the wall and cut her leg.
The defendants' primary contention on appeal is that plaintiffs did not prove their allegations of negligence as no admissible evidence was presented establishing Sears employees knew or should have reasonably discovered the mirror was broken prior to the accident. They further argue the record does not support the finding that the mirror was unsafe because it was improperly attached to the wall. Defendant also contends that in any event Mrs. Bobo was guilty of contributory negligence or assumption of the risk in that she admitted she was aware the mirror was broken and chose to use the dressing room in spite of this fact. Alternatively defendant asks that the award of $5,000 for pain and suffering be reduced as it contends this sum is excessive and constitutes an abuse of the trial court's discretion.
Plaintiffs contend the judgment of the trial court is supported by the evidence establishing negligence on the part of defendant, and also urges liability should attach even without a finding of fault under the provisions of La. Civil Code Article 2322. Because of our conclusions expressed hereinafter, we do not find it necessary *909 to discuss the applicability of this article.
The record shows that some time after 6:00 p. m., on April 26, 1971, Mrs. Bobo entered the Sears Roebuck store in Bossier City to shop for clothing. As the sales clerks in the ladies apparel department were engaged with other customers, Mrs. Bobo selected an item of clothing and proceeded to the dressing room area to try on the garment. There are a number of dressing compartments on either side of an aisle. The area of each compartment is only 3' 10" square. The rear wall is of concrete block construction with the side partitions made of thin gauge metal. An accordion type door affords privacy. There is a full length mirror on the rear wall which is attached by four brackets, two at the top and two at the bottom.
Mrs. Bobo testified that after entering the dressing compartment in question she noticed the mirror was broken or cracked, but as she only intended to be in the dressing room a moment it did not occur to her the mirror would fall from the wall. She further testified that after trying on the garment and while changing back into her clothes a triangular piece of the mirror fell, striking the thigh of her left leg, causing a large gash. As she was clad only in her underwear she called out for help and another customer, Mrs. Louise Epperson, responded immediately to her outcry. Store employees summonsed an ambulance and Mrs. Bobo was carried to Bossier General Hospital where the wound was sutured with approximately 70 stitches.
In an attempt to establish actual knowledge of the defective mirror on the part of Sears, plaintiffs called Mrs. Epperson, the customer who first came to Mrs. Bobo's aid, who testified that just moments after the accident and while several employees were gathered around Mrs. Bobo, one of the employees declared that she had noticed the mirror was cracked earlier in the day. This testimony was objected to by defendant as being hearsay and was admitted by the trial judge subject to this objection.
In finding negligence on the part of defendant the trial judge evaluated the evidence as follows:
"Although the evidence is conflicting, the Court is of the opinion that the plaintiffs have not proved that the defendant had actual knowledge that the mirror was cracked. The evidence shows that defendant's salesladies were constantly in the area and that they frequently checked the dressing rooms. While a primary purpose of their checking the dressing rooms was to look for evidence of possible thefts, they also checked the conditions of the dressing rooms. In the opinion of the Court they should have noticed that the mirror was cracked and should have realized that it was potentially dangerous, and should have closed this particular dressing room until the mirror was repaired.
"The Court is also convinced by the testimony and by the exhibits filed in evidence that the mirror was not sufficiently secured to the wall. The evidence shows that the mirror is approximately five feet in length and two feet in width. It was attached to the wall with four plastic brackets, two at the top and two at the bottom. There were no brackets on the sides of the mirror. The dressing room is itself, as are the other dressing rooms, approximately four feet by four feet in size. The walls or partitions between the dressing rooms are made of light material. Each dressing room is provided with a chair which has a steel bar on the back. It is the opinion of the Court that in this small dressing room where customers are constantly changing clothes, a mirror of this size should be more securely attached to the wall to allow a margin of safety for bumping and knocking which will take place in such an area." *910 Although the trial judge found Sears did not have actual knowledge of the broken mirror prior to the accident, it is not clear to us whether the court arrived at this conclusion because it excluded Mrs. Epperson's testimony as being inadmissible, or based this finding on other evidence.
We think a resolution of the admissibility of this testimony is appropriate and shall dispose of it first.
The general rule on the admissibility of this type evidence is stated in Wigmore on Evidence, Vol. IV, Section 1048 (3rd ed., 1940) at pages 2 and 3: "The statements made out of court by a party-opponent are universally deemed admissible, when offered against him."
The representative or vicarious admissions of an agent acting for a principal are admissible when offered by an opposing party. See Wigmore, supra, Section 1078. Also to fall within these exceptions to the hearsay rule, plaintiffs must show with a sufficient degree of certainty that the person alleged to have made the admission was an employee of Sears and was acting in the scope of his authority.
The testimony of Mrs. Epperson appears in the record to be credible and no attempt was made by defendant to impeach or show any improper motivation on the part of this witness. She testified the person who made the statement had waited on her a short time before and had directed her to a particular department in the store. She had also seen this person bringing out clothing and straightening on a clothes rack. She further testified she had noticed the lady waiting on other customers. Although Mrs. Epperson could not identify the person by name or appearance at the time of trial, we think her testimony is believable and should be accepted. In accord with the testimony of other Sears' employees that all employees had the responsibility of reporting a broken mirror or other hazard, this would bring the admission within the scope of the employee's duty and authority sufficiently to bind the employer. We find further support for our conclusion in this regard in the cases of Pacholik v. Gray, 187 So.2d 480 (La. App. 3rd Cir. 1966), and Terry v. LaGasse, 266 So.2d 231 (La.App. 4th Cir. 1972).
Although defendant called a number of employees on duty on the date of the accident, none of whom admitted making any such statement or having any prior knowledge of the cracked mirror, we do not find this evidence to necessarily outweigh the positive testimony of the impartial witness, Mrs. Epperson.
There is no question that Mrs. Bobo was an invitee on the premises of Sears. In Brown v. State Farm Fire & Casualty Company, 252 So.2d 909 (La.App. 2nd Cir. 1971), the duty owed an invitee by an owner is stated as follows:
"To the invitee the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions on the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger."
It is obvious that a broken mirror in a small area less than four foot square in which patrons are expected to undress is a dangerous instrumentality and to fail to close the room to use of customers is a breach of the duty owed to Mrs. Bobo which constitutes actionable negligence.
We do not find the use of the dressing compartment by Mrs. Bobo with knowledge of the mirror's condition to constitute either contributory negligence or an assumption of the risk. Although a cracked mirror of this length, secured by brackets only at the top and bottom, is a hazard, it is not such an obvious danger that would cause a reasonably prudent person to instantly withdraw from the room in which it is situated.
*911 The trial judge awarded Mrs. Bobo the sum of $5,000 for pain and suffering and for what he described as "a very noticeable and disfiguring scar even after undergoing plastic surgery." We have examined photographs of the scar that are in the record and agree with the trial judge's evaluation of the disfigurement to this young lady's leg. There is no abuse of discretion shown in the amount awarded by the trial court to Mrs. Bobo.
For the foregoing reasons the judgment appealed from is affirmed. Costs of this appeal are taxed to appellant.