449 So.2d 18 (1984)
Tommy A. THOMAS
v.
RPM CORPORATION, et al.
No. 83 CA 0359.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Rehearing Denied April 3, 1984.
Writ Denied June 1, 1984.
*20 Ralph W. Stephenson, Jr., Baton Rouge, Wm. Henry Saunders, Jena, for plaintiff, appellant.
James E. Moore, R. Michael Caldwell, Franklin, Moore & Walsh, Baton Rouge, for defendants, appellees.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
This is a suit for worker's compensation benefits arising out of an automobile accident which occurred on January 12, 1982. Plaintiff, Tommy A. Thomas, had left his employment at RPM Corporation (defendant) and was giving two fellow employees, Kevin Maynard and Tony Zieto, a ride home in a vehicle owned by defendant. At approximately 6:00 p.m., after dropping both of them off, plaintiff was attempting to enter Airline Highway from Highland Road to go home when he collided with a vehicle which ran the red light at that intersection. Plaintiff sustained serious injuries to his back.
The trial court rendered judgment for defendant, finding that "Mr. Thomas was not in the course and scope of his employment at the time of this accident because, as the defendants contend, the truck had merely been loaned to [Thomas] as a gratuity, for him to use until his vehicle was repaired." Plaintiff appealed and specified as error the trial court's "dismissing plaintiffs claim for workers compensation, medical payments, and penalties on the grounds that company furnished transportation for employees was a loan."
Generally, for an injury to be compensable under our worker's compensation law, the injury must be "by accident arising out of and in the course of [the claimant's] employment...." La.R.S. 23:1031. In order to determine if an employee experienced an accident "arising out of" his employment, it must be determined whether the accident was the result of some risk to which the employee was subjected in the course of his employment and to which he would not have been subjected had he not been so employed. The "during the course of" element of the compensation statute brings into focus the time and place relationship between the accident and the employment. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Reynolds v. Be-Neat Tank Cleaning Corp., 425 So.2d 881 (La.App. 4th Cir.1983). Ordinarily, an employee injured while going to or returning from work is not entitled to compensation because the injuries are considered as not arising during the course of the employment. Gardner v. Industrial Indemnity Company, 212 So.2d 452 (La.App. 1st Cir.1968). However, this rule is subject to a number of jurisprudentially established exceptions. Such exceptions arise, for example, when the accident occurs during a trip the employee is making in the interest of his employer's business or pursuant to his employer's order, or when the employer has interested himself in the transportation of the employee as an incident to the employment agreement, or where the employee was doing work for his employer under circumstances where the employer's consent could be fairly implied. Reynolds, 425 So.2d at 883. See also Landry v. Benson & Gold Chevrolet, 398 So.2d 1262 (La.App. 4th Cir. 1981); Sanders v. Hercules Sheet Metal, Inc., 377 So.2d 486 (La.App. 4th Cir.1979), modified on other grounds, 385 So.2d 772 (La.1980); Gardner, 212 So.2d at 455.
In this case, plaintiff testified that on the day of the accident Bob Long, part owner and shop supervisor, "asked me if I would mind picking up Tony because his truck was broken down...." Plaintiff further testified that the use of the truck was given him in lieu of a pay raise:
Q Now, after Mr. Glenn Brown terminated his employment at RPM, you did not get a raise in salary, did you?
A No, Sir.
Q At some point in time Mr. Tony Zieto got a riase (sic); is that right?
A He took over the general foreman's job, that's right. Mr. Long said they couldn't get me a raise right then, *21 but he said, "I'll get you use of the truck." And I said, "That's fine."
Q Well, Mr. Long isn't here today, so we have no way
A I have no reason to lie to you or anybody else.
Defendant did not directly refute either of plaintiff's assertions concerning statements made by Bob Long.[1] In fact, Richard Blackstone, an owner of defendant, testified that Bob Long had authority for the day-to-day operation of the shop and authority over the use of vehicles. Mr. Richard LeBlanc, another owner, testified that his testimony would be the same as Blackstone's concerning company policy. Both witnesses testified that the truck was not part of any "employment package," but both witnesses also testified that at the time of the accident neither was very involved in or familiar with the day-to-day operations of defendant. Additionally, Blackstone stated that Bob Long was "general manager" of the shop.
Plaintiff further testified that he used the company-supplied pickup truck "to drive back and forth to work and when I had to come in at night or on the weekend." Further, "I used this truck when I had to deliver something on the way home." Apparently, plaintiff was frequently called upon by his employer after hours to do work involving use of the truck. Plaintiff related a particular incident in which he was called on the weekend to help transport a trade show display from the Centroplex in Baton Rouge back to the RPM office at La Belle. Plaintiff also testified that on the day of the accident he had picked up Kevin Maynard and Tony Zieto "because neither one of them had a ride," and stated that "Tony had been driving to work with me about a month."
Ann McCormick, a secretary for defendant at the time, testified that plaintiff started using the truck in October and used it until the accident; that plaintiff worked a forty-hour week (four days a week, ten hours a day, with Friday, Saturday and Sunday off); that plaintiff was sometimes called in on Fridays to work, for which time he would be paid overtime; that the company paid for the gasoline used in the truck.
Tony Zieto testified that Bob Long told him the only reason plaintiff was using the truck was that his own personal truck was broken. However, Zieto further testified that this discussion took place "some time in December." We must note at this point that the testimony of plaintiff's wife, Glynda, and Ricky Lee, another fellow employee, firmly established that plaintiff first acquired use of the truck in late September or early October. Plaintiff testified that his truck was repaired around October 22, 1982. This means that Bob Long's assertion to Zieto (that plaintiff was using RPM's truck because his was broken down) was made after plaintiff's truck was repaired. The record establishes that plaintiff had the use of the vehicle from late September or early October, 1981, until the time of the accident, approximately four months.
Lastly, we find it probative that Tony Zieto was given use of the replacement truck after plaintiff's accident. Also, at all times RPM paid for gas and oil for the truck through an account at a nearby service station.
The trial court's reasonable evaluations of credibility in worker's compensation cases are accorded great weight by the reviewing court. Berry v. Livingston Roofing Co., 403 So.2d 1247 (La.1981). However, this deference carries with it a concomitant responsibility: "In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability *22 of this testimony." West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979). In that case, the Supreme Court noted that "the appellate court is not required by [the deference] principle to affirm the trier of fact's refusal to accept as credible uncontradicted testimony ... where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles." West, 371 So.2d at 1150.
Here, neither the testimony of plaintiff nor his credibility was challenged. Actually, his version of the facts paints a consistent and highly probable picture of the circumstances surrounding his use of the company vehicle. Furthermore, his testimony as to the statements of Bob Long, part owner of the corporation and shop manager at the time of the accident, tend to prove why plaintiff had use of the vehicle. Nevertheless, the trial court apparently chose to believe the testimony of two of defendant's owners who admitted that they were not familiar with the day-to-day operations of the company, and could offer only hearsay statements allegedly made by Bob Long at a board meeting to explain why plaintiff was using the truck. It also ignored the statements plaintiff testified were made by Bob Long, which statements were entirely consistent with the facts and circumstances as developed in the record. The statements of an employer regarding the occurrence of an accident in a worker's compensation proceeding have been admitted as proof of the accident itself, being an admission against interest by the employer, even when the admission was hearsay related by a party opponent. Clifton v. Arnold, 87 So.2d 386 (La.App. 1st Cir.1956).
A material statement made by an agent for a principal is admissible at trial when offered by a party opponent, Pennington v. F.G. Sullivan, Jr., Contractors, Inc., 416 So.2d 192 (La.App. 1st Cir. 1982), writ denied, 421 So.2d 248 (La.1982), but the agent's authority to make such a statement must be established. Pacholik v. Gray, 187 So.2d 480 (La.App. 3rd Cir. 1966).
We note the opinion of the Second Circuit in Bobo v. Sears, Roebuck and Company, 308 So.2d 907 (La.App. 2nd Cir.1975). The court in Bobo used an admission against interest made by a sales clerk of the defendant and related to the court by a witness. The authority of the clerk to make the statement was established only by the court's noting that the witness testified that the "person who made the statement" had waited on her, brought clothing out and put it on the clothes rack, and waited on other customers. The court held that this would bring the admission (that all employees had the responsibility of reporting the broken mirror which cut plaintiff) within the scope of the employees' duty and authority sufficiently to bind the employer. Bobo, 308 So.2d at 910.
We find that although the truck may not have been part of the original "employment package" that defendant offered plaintiff, it clearly was made part of plaintiff's compensation by the shop manager who possessed at least such apparent, if not actual, authority. Likewise, he possessed the requisite authority to make the statements he did for defendant corporation, and as such, they must be taken as admissions against interest here.
Furthermore, we find that the circumstances surrounding plaintiff's use of the truck do not indicate that it was a mere loan to plaintiff, but instead that it was given to him at least partly in the company's interest. Plaintiff was called upon after his regular hours to use the truck for company business and to transport fellow employees to and from work.
We find that the totality of the circumstances present in this case taken with the admissions of Long indicate that plaintiff was in the course and scope of his employment on the date of his injury-producing accident. Johnson v. Aetna Casualty & Surety Co., 387 So.2d 1340 (La.App. 1st Cir.1980), writ denied, 393 So.2d 746 (La. 1980). We turn now to consider the extent of his disability.
*23 After the accident, plaintiff was seen at Our Lady of the Lake Hospital Emergency Room by Dr. Vance G. Byars. At the suggestion of a friend he contacted Dr. John J. McCutchen, a neurologist in Houston, Texas, when his symptoms worsened. McCutchen saw plaintiff on February 4, 1982, and hospitalized him at the Twelve Oaks Medical Center for diagnostic testing. During this time, in addition to McCutchen, plaintiff was seen in consultation by Dr. T.R. Williams, a urologist, and Dr. L.C. Detenbeck, an orthopedic surgeon. He was hospitalized from February 5 through February 12, 1982. Laboratory electromyography demonstrated an L-4, L-5, S-1 nerve root irritation bilaterally. Myelography revealed blunting of the left nerve root sleeve below the L4-5 interspace. Lumbar discography revealed a normal L3-4 disc while the L4-5 and L5-S1 discs were degenerated with rupture of the anulus and reproduction of radicular pain. X-rays demonstrated narrowing of C4-5 and C5-6 interspaces as well as L5-S1 interspace. McCutchen's diagnosis was (1) mechanical spine disease with stage III discography, L4-5, L5-S1 and cervical spondylosis, (2) cerebral concussion with post-concussion syndrome, (3) thoracic outlet syndrome, right, and (4) impotence secondary to diagnosis number 1.
Dr. McCuthen's deposition was taken in lieu of his live testimony. Therein, he testified that he felt that plaintiff was in substantial pain; that surgery was recommended to treat the ruptured disc in his low back; that light work would aggravate his medical condition and produce increased pain; and that plaintiff was totally disabled to do hard manual labor.
Defendant had plaintiff examined by Dr. Baer L. Rambach, an orthopedic surgeon. His report was introduced in evidence and states that in his opinion plaintiff sustained muscle and ligament strain to his cervical and lumbosacral spine at the time of the accident. He also felt that plaintiff was improving and should be able to return to work. Apparently, he did not see the results of the electromyography, myelography, or discography. His x-rays did show narrowing of the disc spaces at C4-5 and C5-6, but he attached minimal significance to this finding.
We find that the total medical evidence satisfies plaintiff's burden of proof and shows that he is presently totally disabled for purposes of worker's compensation.
The records contain exhibits to verify incurred recoverable medical expenses as follows:

Twelve Oaks Pharmacy 23.65
Twelve Oaks Pharmacy 20.00
Twelve Oaks Pharmacy 49.65
Eckerd's 6.95
Twelve Oaks Pharmacy 120.00
Twelve Oaks Pharmacy 20.00
K & B 31.69
K & B 63.13
K & B 68.52
K & B 21.06
Wood Radiology 70.00
Wood Radiology 71.00
McCutchen bill 1,890.00
Twelve Oaks 3,681.90
Our Lady of the Lake 55.00
Dr. Williams 75.00
Dr. Detenbeck 250.00
Wood Radiology 201.00
Court Reporter 154.40
 _________
 $6,872.95

Plaintiff is entitled to recover $6,872.95 for his incurred medical expenses. His right to reasonable future medical expenses is reserved to him.
Plaintiff seeks penalties and reasonable attorney's fees per La.R.S. 23:1201.2 because defendants were allegedly arbitrary, capricious, or without probable cause when they denied his claim. We find that a serious issue was involved in this case as to whether plaintiff was in the course and scope of his employment at the time of his accident. Defendants were not arbitrary, capricious, or without probable cause in litigating this issue, and plaintiff is not entitled to the benefits provided in La.R.S. 23:1201.2.
For the above reasons, the judgment of the trial court is reversed. There is judgment in plaintiff's favor and against defendants, RPM Corporation and Hanover Insurance Company (defendant's compensation *24 insurer), jointly and in solido, for weekly compensation payments during disability at the maximum rate of $183.00, commencing on January 12, 1982, with legal interest on each weekly installment from date of delinquency until paid. Plaintiff is also awarded medical expenses incurred until the date of trial in the sum of $6,872.55, together with legal interest thereon from due date until paid. Shatoska v. International Grain Transfer, Inc., 430 So.2d 1255 (La.App. 1st Cir.1983). Plaintiff's right to recover future medical expenses resulting from this accident is reserved to him. Defendants are cast with all costs of these proceedings, including Dr. McCutchen's expert witness fee of $300.00.
REVERSED AND RENDERED.
NOTES
[1] Bob Long did not testify. Apparently, at the time of trial he was no longer associated with defendant. He had been subpoenaed by plaintiff but had car trouble and did not appear. According to representations of both counsel during oral argument and in response to court questions, the trial court laid the matter over for thirty days so Long's testimony could be taken, but no effort was made to take the testimony by deposition or otherwise.