569 So.2d 227 (1990)
Howard Mark SEAY and his Wife, Audrey Seay
v.
James R. WILSON, Services Equipment and Engineering, Inc., Fireman's Fund Insurance Company, Robert Newman, and The XYZ Insurance Company.
Richard Brooks JOHNSON
v.
Robert NEWMAN, et al.
Paul HUGHES
v.
Robert NEWMAN, et al.
Nos. 89/CA/1368, 89/CA/1247 and 89/CA/1248.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
Writ Denied January 4, 1991.
*228 Patrick W. Pendley, and John M. Deakle, Hattiesburg, Miss., for plaintiffs-appellees Howard M. and Audrey Seay.
Keith M. Borne, Lafayette, Benjamin L. Johnson, Donaldsonville, for defendants-appellants James R. Wilson, Services Equipment & Engineering and Fireman's Fund Ins. Co.
Gary L. Boland, Baton Rouge, for defendant-appellant Granite State Ins. Co.
Benjamin L. Johnson, Donaldsonville, for defendant-appellant Robert Newman.
Charles J. Ballay, Belle Chase, for plaintiffs-appellees Paul Hughes and Ricky Johnson.
Before SAVOIE, CRAIN and FOIL, JJ.
SAVOIE, Judge.
This case involves the issue of whether the trial judge erred in granting a motion for a judgment notwithstanding the verdict whereby he reversed the jury's finding that the plaintiffs were in the course and scope of their employment when they were injured in a car accident. Granite State Insurance Company (Granite State) moved for and was granted a judgment notwithstanding the verdict on its third party demand against Fireman's Fund Insurance Company (Fireman's Fund). From this judgment, Fireman's Fund appeals. Finding that the course and scope issue must be decided by the court and not by the jury, and finding no manifest error in the court's determination that the accident did not occur in the course and scope of the plaintiffs' employment, we affirm.

FACTS AND PROCEDURE
On December 18, 1984 the plaintiffs, Howard Mark Seay, Richard Johnson, and Paul Hughes, were returning home from their jobs offshore in a vehicle owned by their employer, Services Equipment and Engineering, Inc. (SEE), and driven by their supervisor, James R. "Ricky" Wilson. At approximately 11:30 p.m. in a heavy fog on Interstate 10 on the bridge over Whiskey Bay near Henderson, the SEE vehicle struck the rear of a vehicle driven by Robert Newman. After the collision, Wilson, Seay, Johnson, and Hughes left the automobile. They stood on a ledge on the other side of the bridge's railing to avoid being hit by vehicles involved in several chain reaction collisions following the initial accident. When the other collisions stopped Wilson and Seay returned to the SEE vehicle *229 to remove things from the trunk. As they opened the trunk, there was an explosion and fire which burned both men.
Seay, Johnson, and Hughes filed suits seeking to recover damages for the injuries they sustained in the accident.[1] Named as defendants were Wilson; SEE; Fireman's Fund, SEE's primary insurer; Granite State, SEE's excess insurer; and Newman. The coverage limits of Fireman's Fund were $500,000 in liability insurance and $500,000 in uninsured motorist insurance; Granite State's coverage was up to $5,500,000.
Granite State filed a third party demand against Fireman's Fund alleging that it was entitled to reimbursement under Fireman's Fund uninsured motorist coverage for all damages sustained by the plaintiffs due to the negligence of Newman, who was uninsured. Granite State also alleged that "Fireman's Fund should pay its share of the damages up to ... the full limits of its policy, if the damages are proven to be at that amount by plaintiffs." Granite State also filed a cross-claim against Newman, seeking to recover from him any damages that the plaintiffs sustained.
The case first went to trial before a jury on March 24, 1986 and March 31-April 2, 1986. The trial was not completed partly because an issue arose as to whether the judge or jury should determine whether the plaintiffs were in the course and scope of their employment. Writs were taken from the judge's decision that it should be his determination; this court granted the writ, finding that the issue should be decided by the jury.[2] The trial judge recessed the trial so that the plaintiffs could apply for writs with the supreme court. The supreme court denied writs on April 22, 1986. Trial of the matter began anew on June 23, 1986 with selection of a new jury.
On June 25, 1986, Fireman's Fund settled the claims of Johnson and Hughes for a total of $200,000 from the uninsured motorist coverage of Fireman's Fund; Hughes and Johnson, in return for the settlement, released SEE, Wilson, Fireman's Fund, and Granite State.
Following Seay's presentation of his case, Wilson, SEE, Fireman's Fund, and Granite State reached a settlement with Seay. Granite State was to pay Seay $1,500,000.[3] As its share of the settlement, Fireman's Fund was to pay Granite State $300,000 from Fireman's Fund uninsured motorist's coverage. Fireman's Fund agreed to reserve to Granite State all rights and/or remedies Granite State had against Fireman's Fund up to the limits of the $500,000 bodily injury limit in the policy, under its liability insurance. Following the announcement that a settlement had been reached and the reading of the judgment memorializing the settlement into the record, Fireman's Fund moved for a judgment on the pleadings against Granite State on its third party demand. (The motion for judgment on the pleadings only applied to the Seay case.)
The basis of Fireman's Fund's motion was that for Granite State to prevail on its third party demand against Fireman's Fund for payment by Fireman's Fund of $500,000 under its liability limits of the SEE policy, Seay, Johnson and Hughes could not be in the course and scope of their employment at the time of the accident. Fireman's Fund contended that Granite State had taken the position in its pleadings that the plaintiffs were in the course and scope of their employment; because Fireman's Fund also pled this defense, *230 it argued that there was no contested issue of fact such that it was entitled to a judgment on the pleadings. The trial court granted the judgment on the pleadings; from the trial court's judgment, Granite State appealed. This court reversed the trial court's ruling, finding that the motion for judgment on the pleadings was untimely and should not have been granted because it was filed after the trial began. Seay v. Wilson, 536 So.2d 495 (La. App. 1st Cir.1988). We remanded the matter for further proceedings.
During the pendency of the appeal in the Seay case, the third party demand filed by Granite State against Fireman's Fund and the cross claim against Newman in the Johnson and Hughes cases were tried. The jury returned a verdict finding that Seay, Johnson, and Hughes were in the course and scope of their employment when injured and that Wilson and Newman were each 50% at fault. The judge signed a judgment which dismissed the third party demand of Granite State against Fireman's Fund in accordance with the jury's findings on the course and scope of employment issue.[4] Granite State filed a motion for judgment notwithstanding the verdict, which the trial judge granted, finding that the plaintiffs were not in the course and scope of their employment. In accordance with his ruling, the trial judge signed a judgment in favor of Granite State and against Fireman's Fund, awarding Granite State $1,000,000 together with legal interest from date of judicial demand subject to a credit of $500,000 previously paid by Fireman's Fund under the uninsured motorist portion of SEE's policy. The judge further ordered Fireman's Fund to pay all court costs less the sum of $10,000 which Granite State consented to pay.
Fireman's Fund appeals from this judgment raising as error the trial judge's granting of the motion for judgment notwithstanding the verdict based on his conclusion that the plaintiffs were not in the course and scope of their employment when injured.

TRIAL TESTIMONY AND EVIDENCE
As set forth earlier, it is undisputed that Hughes, Seay, and Johnson were injured while passengers in an automobile owned by their employer, SEE. The driver of the vehicle, Wilson, was employed by SEE as a toolpusher (the person who supervises the crews); Johnson and Seay were floor hands and Hughes was a driller on Wilson's crew. SEE provided Wilson with the automobile because it was the company's practice to give the toolpusher a car. This was a company car, with oil, gas, maintenance, and insurance provided by SEE.
At the time of the accident, these employees were on their way home after having been offshore on an oil rig. Before going offshore, these employees and another member of their crew, Farrell Dupre, were at the SEE yard in Houma refurbishing and rebuilding an oil rig for use in the Gulf of Mexico. After completing this task, the employees were given one day in which to make a "flying trip" home and pack their clothes and then proceed to Cameron where their employment duties took them offshore. The employees had driven their cars to the SEE yard in Houma at their expense and they had to drive their cars home after the job was finished.
On December 9, 1984, Seay, Johnson and Hughes met Wilson along his way to Cameron so that they could ride with him in the SEE company car. Wilson drove from his home in Sumrall, Mississippi. Seay drove in his own car from his home in Lumberton, Mississippi to meet Wilson at the McDonald's in Columbia, Mississippi. Johnson drove in his car from his home in Harvey, Louisiana to meet Wilson in Hammond, Louisiana. Hughes also met Wilson along his route. Dupre did not ride with Wilson; he drove his car at his expense from his home in Marksville, Louisiana to the dock in Cameron. Wilson did not go out of his way to pick up Seay, Johnson, and Hughes. None of the SEE employees *231 except Wilson, who was on salary, were paid wages for their time traveling from their homes to the dock in Cameron. SEE paid all travel expenses for the vehicle driven by Wilson; Hughes, Johnson, and Seay did not pay any of the travel expenses. SEE began paying wages to Seay, Hughes, Johnson, and Dupre once they left the dock at Cameron and were en route to the offshore rig by way of company transportation.
On December 18, 1984, after working offshore since December 9, the crew was transported by company transportation from the rig to the dock in Cameron. They arrived at the dock at 9:00 p.m., which was when their pay stopped. None of the SEE employees except Wilson, who was salaried, were paid any compensation for any purpose after leaving the dock at Cameron. Dupre was driving his vehicle home, again at his expense; Wilson was giving Johnson, Hughes, and Seay a ride back to their cars when the accident occurred, 2½ to 3 hours after the men had left the dock and approximately 130 miles away from the job site.
Seay, Hughes, and Johnson were terminated by SEE on December 27, 1984, by Greg Risher, the personnel director of SEE at that time. On Hughes' separation notice, Risher wrote that the reason for the termination was "Layoffunable to go to worksaid his back hurts! Not workmans comp!" Seay, Hughes, and Johnson did not receive worker's compensation benefits or medical benefits. While Hughes and Johnson never made formal claims for worker's compensation, Wilson received worker's compensation without filing a formal claim. Hughes testified that he did not make a formal claim for worker's compensation because he was terminated before he could do so. Johnson testified that he asked Risher about worker's compensation, but was told that this was not a worker's compensation claim. Furthermore, when Johnson's doctor billed SEE for Johnson's medical expenses, Risher wrote him and said that this was not a worker's compensation claim.
SEE company policy prohibited the use of company vehicles for transporting its employees to and from the docks from which employees were transported to oil rigs offshore. The company policy of SEE required its employees to provide their own transportation at their expense to any dock from whence SEE provided transportation to the rig offshore. Furthermore, the employees went on the payroll when they were on their way from the dock to the rig and went off the payroll when they returned to the dock.
The testimony regarding the reason that Wilson gave three of his crew members a ride is contradictory. Wilson testified that it was his idea to give Seay, Johnson, and Hughes a ride to help them out. He testified that no one instructed him to give the men a ride, but that he did ask Myron Robichaux, SEE's operations manager, if it was all right since it was not the regular procedure. Wilson testified that he told Robichaux that it would help the group out if Wilson could give them a ride; according to Wilson, he offered the ride as a friend, purely for convenience, and the men were under no obligation to accept the ride. Wilson stated that he was not acting as the men's supervisor while they were in the car; he considered his job over once the men returned to the dock from the rig.
Johnson also testified that Wilson was giving him and the other men a ride because they all lived in the same area; he added that Dupre did not travel in Wilson's car because it would not have been convenient since he did not live in the same area. Johnson and Seay both testified that this was the only time they did not use their personal vehicles to get to the dock.
Robichaux testified that Wilson asked permission to give his crew a ride and that Robichaux made an exception to the general company policy and gave him permission. Robichaux said his reason for allowing Wilson to transport the crew members was that the crew could get to the rig on time and that the ride would offset the lower wages the crew would receive offshore because they were working on a smaller rig at lower pay. Robichaux testified that he did not tell anyone his reasons for permitting Wilson to drive the other employees. Robichaux testified that the *232 employees did not have to take the company transportation.
Hughes testified that he was present when Robichaux and Wilson discussed the transportation arrangements. Hughes said Robichaux told Wilson to give the employees a ride to Cameron.

LEGAL ANALYSIS
We pretermit discussion of whether the trial judge's decision to grant the motion for judgment notwithstanding the verdict was proper based on the standards for granting judgments notwithstanding the verdict. We do this based on our determination that the issue of whether an accident is work related is to be decided by the court and not by the jury. Solet v. K-Mart Corp., 555 So.2d 35 (La.App. 1st Cir.1989), writ denied, 558 So.2d 572 (La.1990). In the Solet case, the plaintiff filed a tort suit against K-Mart, her employer, seeking recovery for an injury she sustained in the K-Mart cafeteria on her lunch hour. The case was tried by a jury, and one of the jury interrogatories dealt with whether the accident occurred within the course and scope of the plaintiff's employment. The jury determined that the accident did occur within the course and scope of the plaintiff's employment. This court found that the trial judge erred by allowing the jury to decide whether the accident was work related. Solet, 555 So.2d at 36. In Solet, we disregarded the jury's finding and made a de novo determination as to whether the accident was work related.[5]
In the case at bar, we will disregard the jury's determination that the accident was work related; however, in the case at bar, unlike the Solet case, the judge did make a determination that the accident was not work related when he granted the motion for judgment notwithstanding the verdict. A trial judge is to grant a judgment notwithstanding the verdict when after considering all the evidence in the light most favorable to the party opposed to the motion, he finds that the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict on the issue. Cosie v. Aetna Casualty & Surety Insurance Co., 527 So.2d 1105 (La. App. 1st Cir.1988). Because the trial judge made a factual determination, we need not make a de novo determination and instead will review the record to determine if the trial judge's finding was clearly wrong.
Generally, for worker's compensation purposes, an employee is not considered to be in the course and scope of his employment while traveling to and from work. Stephens v. Justiss-Mears Oil Co., 312 So.2d 293 (La.1975). See also Thomas v. RPM Corp., 449 So.2d 18 (La.App. 1st Cir.), writ denied, 450 So.2d 965 (La.1984). An exception to this rule arises where transportation is furnished as an incident of the employment, either through a vehicle, a conveyance and driver, or payment of expenses. Michaleski v. Western Preferred Casualty Co., 472 So.2d 18 (La. 1985). See also Thomas, 449 So.2d at 20.
The following considerations regarding transportation as an incident of the employment were set forth in W. Malone and H. *233 Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation § 170, 362-63 (2d ed. 1980):
Whatever the manner in which the employer might have interested himself in the transportation of the employee, the transportation must be an incident of the contract of hiring. The fact that the employer occasionally provides transportation to accommodate an employee is not enough to bring the situation within the exception to the general rule that trips to and from the place of work are outside the course of employment. This distinction between transportation furnished as an occasional convenience and transportation supplied as a part of the employer's undertaking has given rise to much confusion. In view of the informal character of hiring agreements, the undertaking to provide transportation must usually be implied from the circumstances. For this reason, the fact that there is a prevailing practice of carrying employees back and forth is important, and the fact that such trips have been made only infrequently or irregularly has been regarded as in indication that the arrangement is one of accommodation only. However, the fact that the practice is irregular may not be sufficient to overcome other indications of an implied agreement. If the employer has forbidden the use of his vehicles for transportation and this is known to the employee, it is obvious that the latter cannot recover while he is riding in violation of orders.
(Footnotes omitted).
We have thoroughly reviewed the testimony and evidence, and we cannot say that the trial judge was manifestly erroneous in finding that the plaintiffs were not in the course and scope of their employment at the time of the accident.
As earlier stated, accidents while proceeding from work are considered in the course and scope of the employment where the transportation is furnished as an incident of the employment. However, in this case we cannot say that the trial judge erred in finding that transportation was not furnished as an incident of the employment. The trial judge apparently gave no weight to Robichaux's testimony that he authorized the ride to offset the lower wages the men would receive offshore and to insure the timely arrival of the crew. The evidence was not sufficient to show that the plaintiffs were making less money on this particular trip offshore; in fact, according to the evidence, the plaintiffs were receiving overtime pay. Not all of the crew rode with Wilson. Dupre, who did not live along Wilson's route, used his own transportation, and he was not reimbursed any travel expenses for doing so. Additionally, the men were free to decline the offer, according to Robichaux and Wilson; they were not ordered to ride with Wilson. This evidence negates Robichaux's providing transportation as a means to insure the timely arrival of the crew at the rig and to add to the crew's pay.
The remainder of the evidence also supports the trial judge's finding that the ride was not furnished as incident of the employment. SEE's company policy was that the men would provide their own transportation from their homes to the dock; Wilson merely asked Robichaux for permission to give the men a ride because it was against company policy. The evidence indicates that the ride was a one-time gratuitous trip. Wilson and Johnson both testified that the ride was given purely for convenience. All of the men met Wilson at various points along his route; he did not go out of his way to pick up any of them. The one crew member who was not on the route used his own car. None of the plaintiffs were paid wages while they were traveling. After the accident, only Wilson was paid worker's compensation.[6]
We also note that the judge's finding that the employees were not in the course and scope of their employment comports *234 with the growing policy to strictly construe an employer's immunity from suit in tort and to liberally interpret an employer's liability for worker's compensation. Ducote v. Albert, 521 So.2d 399, 406 (La.1988), (J. Lemmon, concurring).
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal to be paid by Fireman's Fund.
AFFIRMED.
FOIL, J., concurs in that the trial judge was correct when he granted the judgment n.o.v.
NOTES
[1] Seay, Johnson, and Hughes each filed separate suits seeking recovery; these suits were consolidated for trial purposes. Additional plaintiffs in each of the suits were the spouses of Seay, Johnson, and Hughes.
[2] In determining that the jury should decide the course and scope of employment issue, this court stated:

Writ granted in relation to the ruling on the affirmative defense of course and scope of employment being tried by the judge. Relators' verified application alleges relators requested a jury trial of all issues. Therefore, unless the parties stipulated to limit the issues triable by jury, all issues shall be part of the jury trial. See La.Code Civ.P. art. 1736.
[3] Of the settlement, $1,400,000 was paid to Howard Seay, and $100,000 was paid to Audrey Seay, his wife.
[4] According to the record, the trial judge and attorneys had agreed to apply the jury findings to the Seay case if this court remanded the matter; thus, the jury findings applied to the Seay, Johnson, and Hughes cases.
[5] We note that the doctrine of "the law of the case" does not preclude us from now holding that the course and scope issue should not have been decided by the jury when in our earlier action in issuing the writ we found that the course and scope issue could be decided by the jury. The doctrine of law of the case is

Merely one of practice or court policy, and not of inflexible law, so that appellate courts are not absolutely bound thereby, but may exercise a certain degree of discretion in its application. The doctrine should not be applied where to do so would accomplish an obvious injustice, or where the former appellate decision was clearly, palpably, or manifestly erroneous.
Brumfield v. Dyson, 418 So.2d 21 (La.App. 1st Cir.1982) (Citations omitted).
We are of the opinion that the law of the case doctrine is not applicable to this case because the previous decision of this court as expressed by the issuance of the writ was clearly erroneous.
Additionally, we note that although Granite State did not raise as an assignment of error the submission of the course and scope issue to the jury, under Rule 1-3 of the Uniform Rules of the Courts of Appeal, where the interest of justice clearly requires, we may review issues that were not specified as error. In this case, the interest of justice does require us to consider this issue.
[6] Counsel for Granite State stipulated that Wilson was in the course and scope of his employment at the time of the accident. We note that as to Wilson, unlike the plaintiffs, the company transportation was furnished as an incident of his employment.